**GULF STATES UNDERWRITERS OF LOUISIANA, INC., Appellant,**

v.

**J.T. WILSON, Appellee.**

No. 09-87-068 CV.

Court of Appeals of Texas, Beaumont.

May 26, 1988.

Rehearing Denied July 14, 1988.

---

Harlan D. Friend, Liberty, Vincent A. Lannie, Baytown, for appellant.

Glen L. Kirby, Kountze, Russell J. Wright, Silsbee, for appellee.

## OPINION

BURGESS, Justice.

Appellee, plaintiff below, brought suit against Gulf States Underwriters of Louisiana, Inc. (Gulf States) and Hermitage Health and Life Insurance Company (Hermitage) for benefits under a blanket accident insurance policy and certificate of reinsurance and for damages under the Tex-

as Deceptive Trade Practices–Consumer Protection Act. Trial was before the court, which rendered judgment for appellee. Gulf States' Motion for New Trial was denied. In response to appellee's motion, the trial court entered a reformed and amended judgment. Gulf States again moved for new trial, which was denied. Gulf States appeals from the trial court's judgment. Appellee raises several cross-points urging he was entitled to additional relief he requested but was not granted below.

Appellee entered into an insurance contract with appellant effective June 29, 1979, and initially paid $85. This case has as its basis a dispute between appellee and the insurance company over how this $85 should be classified: as a "deposit" against future premium shortfalls (according to appellant) or as a premium paid in advance (according to appellee). The regular monthly premium was to be based on a percentage of cords of pulpwood appellee's employer produced each month. In late April 1982, appellee paid $419 premium. Appellant applied this payment to appellee's coverage from March 28, 1982, through April 29, 1982. Appellee was subsequently injured on May 1, 1982. On May 10, 1982, appellant mailed appellee a notice of intention not to renew his policy. Appellee did not pay a premium on the next due date at the end of May. According to appellant, the letter did not actually cancel the policy, but rather, the policy lapsed for non-payment of the premium due at the end of May.

### I.

■ Appellant complains in its first point of error that this court lacks jurisdiction to hear this appeal because the trial court's judgment is not final. Appellant asserts that the reformed and amended judgment did not dispose of its cross-claim, which is still pending and has not been severed by the trial court. The court's reformed and amended judgment, however, granted certain relief and specifically denied all relief not expressly granted in the judgment. Thus, the language of the judgment implicitly denies appellant's cross-claim. *See North East Indep. School Dist. v. Al-*

*dridge,* 400 S.W.2d 893, 898 (Tex.1966). Appellant's first point of error is overruled.

### II.

■ Appellant asserts in its second point of error that "[t]he trial court erred in rendering judgment against [appellant] since recovery under the insurance policy was precluded because the policy had lapsed due to the non-payment of the required premium." In making this assertion, appellant indirectly attacks the court's finding of fact number six:

Wilson timely paid in advance the monetary premiums to keep the foregoing policies of Hermitage and Gulf States in full force and effect from the date of issuance of such policies through May of 1982.

Appellant asserts it was entitled to judgment as a matter of law since lapse of the policy from non-payment of premiums was conclusively established. If there is some evidence the premiums were timely payable in advance, appellant's point must be overruled.

Appellant's theory at trial was that appellee's first payment of $85 was not the first month's premium, but merely a "deposit" which was consideration for issuing the policy but did not effect coverage for any period of time. Following appellant's logic, the first premium was not paid until the *end* of July 1979. That premium would apply retrospectively for coverage during July 1979. Appellant thus maintains that appellee's payment at the *end* of April 1982 was for insurance coverage during the month of April 1982. And, since appellee paid no premium at the end of May, the policy lapsed as of the end of April 1982, so appellee's injury on May 1, 1982, was not covered.

The contract itself provides: "This Policy is issued in consideration of the statements in the application, copy of which is attached hereto and made a part hereof, and of the payment in advance of the premium specified in the Insurance Schedule." The insurance schedule sets out the effective date of the policy as June 29, 1979, and the

"initial premium" as $85. This initial payment was calculated in the policy application by multiplying an estimated production of 100 cords of wood per month by a premium rate of $.85 per cord, for a total monthly premium of $85.

James Thomas testified he and appellee were told at the time application was made that the initial $85 payment was an estimated premium for coverage from June 29, 1979, through July 29, 1979. Appellee testified the premiums were to be paid in advance and that the initial $85 was to apply to the first month's coverage. Appellant admits the deposit "effected the coverage for the initiation of the policy and was consideration given for the issuance of the contract." Appellant's current president and sole stockholder agreed on direct examination that had the deposit not been collected, the company would have been forced to bear some risk free of charge. There is, thus, some evidence that the premiums were to be paid in advance and that the policy had not lapsed at the time of appellee's injury. Appellant's second point of error is overruled.

■ Appellant's third point of error asserts that the trial court's finding that appellee was entitled to recover under the policy was against the great weight and preponderance of the evidence that appellee was excluded from coverage since he is entitled to collect workers' compensation benefits. The special limited blanket accident policy issued to appellee by Hermitage excludes coverage for "accidental bodily injuries for which the employer or his employee is entitled to collect benefits under a liability or Workmen's Compensation policy."

■ The Worker's Compensation Act does not extend to independent contractors. *TEX.REV.CIV.STAT.ANN. art. 8309, sec. 1* (Vernon 1967). At trial, the issue of the applicability of worker's compensation coverage revolved around whether appellee was an employee or an independent contractor of James Thomas. The meaning of the word "employee" is the same whether it is construed in the context of a common-law liability claim or one arising from worker's compensation statutes. *Northwestern Nat'l Life Ins. Co. v. Black*, 383 S.W.2d 806, 810 (Tex.Civ.App.—Texarkana 1964, writ ref'd n.r.e.). In determining the nature of the relationship between the employer and the person employed, the "supreme test" is whether the former had a right to exercise control over the details of the latter's work. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex.1964).

■ An appellate court must consider all the evidence in determining whether a finding is so against the great weight and preponderance of the evidence as to be "manifestly unjust." *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Charles Fant, district manager for Employer's Insurance of Texas, testified that James Thomas in fact carried a worker's compensation policy in effect on the date of appellee's injury. Fant testified that the premium for this policy was based on the amount of "company wood" produced by Thomas and not on "outside wood." Company wood was defined as wood produced by Thomas or people under his control at the direction of Temple–Eastex from timber it owned or had license to cut. Fant defined outside wood as wood obtained by Thomas on the open market, cut by someone other than Thomas or someone under his control. Fant also stated that appellee made no claim under Thomas' compensation policy after the accident, but did make such a claim in 1976.

J.D. Cumby, an employee of Temple–Eastex, testified that James Thomas was a logging contractor for Temple–Eastex and that under their harvesting contract, Thomas was required to carry worker's compensation coverage on workers involved in cutting wood only from company-owned land. Appellant relies in part on language of the harvest contract itself which provides under paragraph four that "[i]f [Thomas] uses sub-contractors, [he] shall not be relieved of any of his duties and obligations under this contract," including, appellant argues, the obligation to provide worker's compensation insurance for them. Richard Sanders, president of Gulf States, testified that Thomas took out the policy in question

to cover people involved in outside wood production.

Appellee testified he was Thomas' subcontractor and did not work exclusively for Thomas. Appellee owned the truck he used to haul wood, but none of the other equipment he used. Appellee was hauling outside wood on the day he was injured. James Thomas testified he hired appellee as an independent contractor to cut outside wood only. He further described their relationship:

> Q I believe you testified that Mr. Wilson, the plaintiff in this cause, did work for you. He did certain work and you told him what to do and he took it to the mill. Is that correct?
>
> A I didn't say I told Mr. Wilson what to do. Mr. Wilson is considered to me as a subcontractor.
>
> . . . .
>
> So, all he does is when he go out there— when they go out to find this wood and buy it, or however how they get it, they bring me the scale ticket and I pay them for it. I don't control him in any kind or way.

The trial court's finding that appellee was entitled to recovery and not excluded under the policy was not so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellant's third point of error is overruled.

In points of error four and five, appellant attacks the trial court's finding that appellee was "wholly" or totally [1] disabled on the grounds that it is supported by no evidence or, alternatively, factually insufficient evidence. The policy itself provides, "If 'such injuries' shall ... continue to continuously and totally disable the Injured Person and prevent him from performing every duty pertaining to his business or occupation ..., the Company will pay from the date of the accident at the rate of Indemnity shown in the Insurance Schedule."

Appellant argues that the finding of total disability was either legally or factually

insupportable because the evidence showed appellee was able to perform some duties of his occupation. In so arguing, appellant proposes a narrow interpretation of the policy language to require that appellee be disabled from *all* of the duties of his occupation, and if appellee could perform even one of the duties of his occupation, he would not be eligible to receive benefits under the policy. Such an interpretation of virtually identical policy language has consistently been rejected by the supreme court. *Prudential Ins. Co. of Am. v. Tate*, 162 Tex. 369, 347 S.W.2d 556, 558–59 (Tex. 1961); *Commonwealth Bonding & Cas. Ins. Co. v. Bryant*, 113 Tex. 21, 240 S.W. 893 (1922); *Great S. Life Ins. Co. v. Johnson* 25 S.W.2d 1093, 1097 (Tex.Comm'n App.1930, holding approved). Total disability is a relative matter and depends chiefly on the circumstances of each case and on the nature of the occupation and the capabilities of the person injured. It does not mean absolute physical disability of the insured to transact any kind of business pertaining to his occupation, but exists if he is unable to do any substantial portion of the work connected therewith. *Tate*, 347 S.W.2d at 558.

In reviewing appellant's claim of no evidence of total disability, this court must consider the evidence and reasonable inferences therefrom in the light most favorable to the court's findings, disregarding all contrary evidence and inferences. *Glover v. Texas Gen. Indem. Co.*, 619 S.W. 2d 400, 401 (Tex.1981). The evidence showed appellee's occupation of thirty years was cutting and hauling wood. He had a ninth-grade education and no skills other than those required for pulpwood production. Appellee testified that, as a pulpwood producer, he was required to cut timber with a power saw, trim logs, pull timber to a loading area using a skidder (a system of cables and winches), load timber on a truck, and drive a log truck to the mill. Appellee further stated that after his injury he did not regain the strength necessary

---

1. The words "wholly and continuously", as they relate the issue of disability, are synonymous with "totally and permanently." *American Nat'l* *Ins. Co. v. Briggs*, 90 S.W.2d 602, 604 (Tex.Civ. App.—Beaumont 1936, writ dism'd).

to run a skidder, operate a power saw, load a truck, or drive a log truck. Dr. M.E. Faulk, Jr., a neurosurgeon and appellee's treating physician, testified by deposition that appellee will be unable to use a chain saw or pull cable from a skidder and that appellee's ability to lift will be markedly limited. He stated that appellee was totally disabled. Appellant's contention of no evidence of total disability under point of error four must be overruled.

In reviewing appellant's claim of insufficient evidence of total disability, this court must consider all the evidence. *In re King's Estate,* 244 S.W.2d at 661. Appellant relies on Dr. Faulk's testimony as evidence controverting appellee's total disability. Dr. Faulk first saw appellee in June of 1982, when he noted appellee's right shoulder and upper right arm were tender and weak. After tests, appellee was diagnosed as having nerve root injury. Appellee's condition progressively improved and he returned to light work in September but was unable to return to his previous work due to pain and weakness in his shoulder. In April 1983, appellee's condition worsened when his entire left side and his right leg began to grow weaker. In June, appellee was admitted to the hospital for tests, at which time one of Dr. Faulk's associates noted progressive weakness in appellee's right leg. Dr. Faulk testified the leg was becoming stiffer and less mobile as time went on. His upper right extremity and right leg showed continued and increased spastic movement. While in the hospital, appellee was diagnosed as having cervical spondylosis, an increasing narrowing of part of his spinal column, causing compression of the spinal cord, *i.e.,* the nerve running through the spinal column. Appellee underwent decompressive surgery after which his left-arm pain subsided and its strength increased, as did the feeling in all of his extremities. However, his right leg was still weak and he suffered intermittent numbness in both hands.

In the first half of 1984, appellee developed two other conditions—bilateral carpal tunnel syndrome in the wrist and bilateral early tardy ulnar palsy—both of which Dr. Faulk stated were possibly work related, but not related to his neck injury. The bilateral carpal tunnel syndrome was corrected by surgery. Appellee's neck and upper back were still so stiff and sore, however, that he could not operate a power saw. In November 1984, appellee still complained of neck and right-arm pain, experienced limited neck motion, walked well, but both hands, especially the right, were weak. In response to questions from appellee's counsel, Dr. Faulk testified appellee could probably drive a truck, but could not use an ax or chain saw or manually haul the cable out from under a skidder. Considering Dr. Faulk's testimony and the evidence set out above under point of error four, the trial court did not err in finding total disability. Appellant's fifth point of error is overruled.

Under points of error six and seven, appellant claims the trial court erred in finding appellee's disability was "permanent as a result of this accidental occupational bodily injury of May 1, 1982" since there is no evidence, or alternatively, insufficient evidence to support the finding. Appellant asserts, first, that any injury appellee suffered was not permanent and, second, that even if the injury was permanent, it was not the result of the May 1 accidental injury.

Dr. Faulk testified the residual problems appellee was experiencing because of the May 1 accident were permanent. These problems included stiffness and soreness of the neck, weakness of the shoulder, and slight weakness of the legs. On cross-examination, Dr. Faulk testified no further treatment would help appellee's neck injury and his arm and other muscles would not strengthen with the passage of time. Thus, the court's finding of permanency of appellee's injury was not legally insufficient. *Glover,* 619 S.W.2d at 401.

In asserting that the court's finding of appellee's injury was permanent is factually insufficient, appellant once again refers to Dr. Faulk's deposition testimony which has been set out above under point of error five. The record as a whole, however, in-

cluding Dr. Faulk's complete testimony, does not support appellant's contention. *In re King's Estate,* 244 S.W.2d at 661.

In attacking the court's finding of causation, appellant first argues that any permanent injury to appellee must be attributed to the cervical spondylosis only and, second, that the cervical spondylosis was attributed to a degenerative osteoarthritic disease rather than the accident of May 1, 1982. Appellant relies on a section of the policy which reads, "The Hermitage Health and Life Insurance Company ... agrees to pay benefits for loss resulting from occupational accidental bodily injuries." The form policy originally provided that an injury would be covered if it "directly and independently of all other causes" continuously disabled the insured. An endorsement, however, deleted that paragraph, providing coverage for continuous disability "directly caused" by an occupational accidental bodily injury and omitting the phrase "independently of all other causes." Without the requirement that injury be caused by occupational accident "independent of all other causes," appellee need not have proved that the accident was the sole cause of his disability, but merely that his disability was proximately caused by the accident. *Community Life & Health Ins. Co. v. McCall,* 497 S.W.2d 358, 366 (Tex. Civ.App.—Amarillo 1973, writ ref'd n.r.e.); *Home Benefits Ass'n v. Smith,* 16 S.W.2d 357, 359 (Tex.Civ.App.—Texarkana 1929, writ ref'd); *cf. Stroburg v. Ins. Co. of N. Am.,* 464 S.W.2d 827, 829 (Tex.1971). Dr. Faulk's testimony conflicted as to the probability that the carpal tunnel syndrome and ulnar palsy were the result of appellee's cervical injury. However, accepting for the sake of argument that the carpal tunnel syndrome and ulnar palsy were not caused by the May 1 accident, appellant's argument is nonetheless invalid.

Throughout his testimony, Dr. Faulk consistently separated as two conditions appellee's cervical spondylosis and his nerve root compression. He testified appellee's nerve root compression was related to the May 1 accident, but that the spondylosis predated the accident, and that appellee's problems were caused by nerve root compression over a pre-existing spondylosis. He stated appellee was diagnosed with multiple nerve root damage, which was the factor necessitating neck surgery. When asked what some of the causes of cervical spondylosis were, Dr. Faulk replied the condition can be the result of a number of factors, primarily the result of use, but also influenced by genetic factors. He agreed it would be unusual for a forty-five-year-old man who subjected himself to physical labor to develop symptoms from cervical spondylosis. He also testified cervical spondylosis would not be the result of a single trauma, but could be the result of multiple slight traumas over many years or no trauma at all.

Generally, "proximate cause" as applied in insurance cases has essentially the same meaning as that applied in negligence cases. *Stroburg,* 464 S.W.2d at 831. In order for the cause of an accident to be the proximate cause, it need not be the sole cause, but merely a concurring cause. *See McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex.1980); *Missouri Pac. R.R. Co. v. American Statesman,* 552 S.W.2d 99 (Tex.1977). With that rule in mind and considering the evidence set out above, appellant's challenges on grounds of legal and factual insufficiency must be overruled. *Glover,* 619 S.W.2d at 401; *In re King's Estate,* 244 S.W.2d at 661. Points of error six and seven are overruled.

### III.

Points of error eight through twenty-one challenge appellee's recovery of treble damages under TEX.BUS. & COM. CODE secs. 17.45, 17.46 & 17.50 (Vernon Supp.1985), sec. 17.46 *amended by* ch. 280, sec. 1, 1987 Tex.Gen. & Spec.Laws 1641 [hereinafter the Act or the DTPA] and TEX.REV.CIV.STAT. art. 21.21 (Vernon 1981) [hereinafter the Insurance Code].[2] Appellee likewise brings four cross-points

2. TEX.REV.CIV.STAT.ANN. art. 21.21 (Vernon 1981), *amended by,* 1985 Tex.Gen. & Spec.Laws 395; ch. 160, sec. 1, 1985 Tex.Gen. & Spec.Laws 714; ch. 261, sec. 1, 1985 Tex.Gen. & Spec.Laws 1234; ch. 761, sec. 1, 1987 Tex.Gen. & Spec. Laws 2713; ch. 46, sec. 5, 1987 Tex.Gen. & Spec.Laws 86.

claiming the trial court erred in not awarding him additional relief under these statutes.

In points of error eight through thirteen, appellant attacks as legally or, alternatively, factually insufficient three of the trial court's findings of fact:

. . . .

**14.**

The action of Hermitage and Gulf States in applying the premium received on May 4, 1982, on its records to show this premium was paid for coverage to April 28, 1982, instead of showing it as paid in advance, was a false, misleading and deceptive practice.

**15.**

The action of Hermitage and Gulf States in issuing policies showing that the premiums paid for Wilson were being paid in advance and then applying such premiums for terms already expired was an unfair method of competition.

**16.**

The action of Hermitage and Gulf States in issuing policies showing that the premiums paid for Wilson were being paid in advance and then applying such premiums for terms already expired was unconscionable conduct.

In point of error twenty-one, appellant raises the argument that asserting an alternative interpretation of an insurance policy, even if it rises to the level of breach of contract, should not support an action for treble damages. The supreme court has adopted the position that a simple breach of contract cannot be a violation of the DTPA, where a "false, misleading or deceptive act" is alleged. *Ashford Dev. Inc. v. US-Life Real Estate Serv. Corp.*, 661 S.W.2d 933, 935 (Tex.1983). This principle has also been extended to cover allegations of unconscionable acts as well. *Coleman v. Hughes Blanton, Inc.*, 599 S.W.2d 643, 646 (Tex.Civ.App.—Texarkana 1980, no writ); *Dura–Wood Treating Co. v. Century Forest Indus., Inc.*, 675 F.2d 745 (5th Cir.1982), *see also* Patton, *Case Law Under the Tex-*

*as Deceptive Trade Practices—Consumer Protection Act*, 33 BAYLOR L.REV. 533, 556–59 (1981); *Smith v. Baldwin*, 611 S.W. 2d 611, 614 (Tex.1981). The entire basis for the court's findings was that appellant sold a policy which clearly said one thing, then acted as though it said another; *i.e.*, it breached its agreement. The rule seems to be equally applicable in the context of Insurance Code article 21.21. Points of error eight, nine, ten, eleven, twelve, thirteen, and twenty-one are sustained.

Appellant contends in points sixteen and seventeen that there is no evidence or insufficient evidence upon which to base the court's finding that "[appellant's] letter of May 10, 1982, . . . stating [that appellant] was exercising an option not to renew the policy 'in accord with the policy provisions' was a misrepresentation of the policy for the purpose of inducing or tending to induce Wilson to lapse, forfeit, or surrender his insurance." Such misrepresentations are prohibited under Insurance Code article 21.21, section 4(1).

Appellee was injured May 1, 1982. Appellant sent appellee a letter dated May 10, 1982, which reads:

Dear Mr. Wilson:

According to our records, the above numbered policy contract is now paid to April 28, 1982.

We ask that you please accept this letter as your official notification of our intent not to renew this policy, in accordance with all policy provisions and conditions for the notification of such non-renewal.

It has been our pleasure to have been of service to you, and we regret that we cannot continue to do so.

The letter is signed by the manager of the policy benefits department.

For the court's finding to be supportable under article 21.21, section 4(1), there must have been (1) a misrepresentation of the policy, (2) which either purposely induced or tended to induce appellee to let the policy lapse. Appellee based his article 21.21, section 4(1) claim on appellant's failure to notify appellee in the letter that he had a right under the policy to pay a premium at

the end of May, thus continuing his coverage for another month.[3] Appellant's evidence countered, in part, that the phrase "in accordance with all policy provisions" referred appellee to the written contract, under which he could have discerned this right to pay a premium at the end of May, giving appellee sufficient notice. The primary issue raised by the facts of this case is whether the May 10 letter opting not to renew "in acccordance with all policy provisions" constituted a misrepresentation of the policy.

By including the phrase "in accordance with all policy provisions," appellant arguably represented that the terms of the policy allowed its action of sending the notice of intent not to renew and thereby cancel the policy. However, considering the clear language of the policy,[4] this cannot be a "misrepresentation of the policy" under article 21.21, section 4(1). Appellee's actual theory, as reflected by the evidence and the trial court's finding, equates failure to give notice of a right under the policy with a "misrepresentation" of the policy. We do not believe appellant's letter cancelling the policy "in accordance with all policy provisions" rises to the level of a misrepresentation of his rights under the policy. Because there is no evidence of a misrepresentation, appellant's points of error sixteen and seventeen must be sustained.

Since there is no basis in law for the trial court's findings supporting its award of treble damages, that award must be reversed. Point of error twenty (claiming the court should not have awarded treble damages on the primary policy jointly and severally since there was no privity of contract between appellant and appellee), cross-point of error one (requesting additional treble damages under the certificate of reinsurance) and points of error eighteen, nineteen, fourteen and fifteen (challenging the sufficiency of the evidence to support the court's finding that the actions of appellant were not done "innocently but were done in bad faith and knowingly" and were "deliberate, willful, and intentional") need not be reached since they do not raise issues necessary to the disposition of this appeal. *TEX.R.APP.P. 90(a).*

▮▮▮ Appellee urges under cross-point of error two that it was entitled to recover the $235,000 under the certificate of reinsurance jointly and severally against appellant *and* Hermitage, rather than against appellant only. Appellee's cross-point affects no real interest of appellant, but rather attacks the trial court judgment as against a defendant below which is not party to this appeal. It is true that an appellee may by cross-point attack the trial court's judgment for relief which appellee requested but did not recover below without perfecting his own appeal. *Hernandez v. City of Fort Worth*, 617 S.W.2d 923, 924 (Tex.1981) (opinion refusing writ n.r.e.). However, this right is subject to the limitation that such cross-point affect the inter-

---

3. Assuming for the sake of argument that the letter was a misrepresentation which did induce appellee not to pay the premium due at the end of May, the court justifiably found that the premium applied to coverage not for May, the month during which appellee was accidentally injured, but for June. As a result, even if the letter did induce appellee to forfeit his coverage, the inducement standing alone was not a proximate or producing cause of any actual damage since he was not actually denied coverage for any accidental injury occurring during the month of June, but rather during the month of May. *See* Insurance Code art. 21.21, sec. 16(a) & DTPA sec. 17.50(a). Appellant, however, does not challenge the court's finding of producing cause.

4. The policy stipulated, by endorsement, that: "A grace period of ten (10) days, without interest charge will be allowed for payment of any premium, during which period the policy shall continue in force if the premium is actually paid on or before the expiration of the grace period herein granted, unless, not less than thirty (30) days prior to the premium due date, the Company has delivered to the Policyowner or has mailed to his last address as shown by the records of the Company, written notice of its intention not to renew this policy beyond the period for which a premium has been accepted. If any premium is not actually paid on or before the expiration of the grace period herein granted, the policy will be considered to have lapsed for default in the payment of a premium as of the last paid to date and the subsequent acceptance of a premium by the Company or by any of its duly authorized agents, shall reinstate the Policy, but only to cover loss resulting from accidental injury thereafter sustained."

est of the appellant or bear upon matters presented in the appeal. *Young v. Kilroy Oil Co. of Texas*, 673 S.W.2d 236, 241 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Appellee has failed to perfect an appeal from the trial court's judgment by filing a cost bond, cash deposit or affidavit in lieu thereof with the clerk within ninety days after the judgment was signed. *TEX. R.APP.P. 40(a)(1) & 41(a)(1)*. The requirement that appeals be properly perfected is mandatory and jurisdictional. *See Glidden Co. v. Aetna Casualty & Sur. Co.*, 155 Tex. 591, 291 S.W.2d 315, 318 (1956). This court is, therefore, without jurisdiction to hear appellee's cross-point two.

In cross-point of error three, appellee asserts the trial court should have awarded the $235,000 recovery under the certificate of reinsurance in one lump sum instead of in weekly installments of $105.00. The "certificate of reinsurance" does not expressly incorporate all the terms of the primary policy, but does provide in pertinent part (emphasis added):

EFFECTIVE: December 1, 1979 And to run concurrently with Primary Policy unless cancelled by Certificate Holder or Master Reinsurance Contract Holder.

SUM INSURED: $235,000 any one person, occurrence. In Excess of $15,000 Death & Dismemberment, Permanent Total Disability any one person, occurrence, payable in weekly benefits.
$85,000 Any one person, any one occurrence—In Excess of $15,000 Temporary Total Disability any one person, occurrence, payable in weekly benefits.
$5,000 Medical Expenses any one person, occurrence.

WARRANTED: This Certificate applies only to Occupational Accidents which occur during the Policy Period to which the Primary Insurance applies. In the event of cancellation, nonrenewal or other termination of the Primary Insurance, this Certificate shall terminate automatically effective at the same date & time.

E.B. Sanders, president and sole shareholder of appellant, testified the $235,000, if payable, was to be payable in weekly installments of $105, relying on the policy language "$235,000 any one person, occurrence. In Excess of $15,000 Death & Dismemberment, Permanent Total Disability

any one person, occurrence, payable in weekly benefits." However, this provision seems unambiguously to call for a lump sum payment of $235,000. The "in excess" phrase is, as Sanders testified, to create in the certificate of reinsurance a deductible of the payments due under the primary policy. Sanders went on to state that the excess above the deductible was to follow the lines of the primary coverage. Neither the language of the policy nor the law supports such a statement. Appellee's cross-point of error three is sustained. Appellee's cross-point four, urged alternatively to cross-point three, need not be reached in light of our disposition of cross-point three. *TEX.R.APP.P. 90(a)*.

The judgment should be reformed to award appellee the following sums:

| | | |
|---|---|---|
| $ 15,000.00 | — | $105.00 for 143 weeks |
| +5,000.00 | — | Medical and hospital coverage |
| 20,000.00 | — | Due February 2, 1985 |
| +1,900.00 | — | Pre-judgment interest at 6% from 2-2-85 to 9-2-86 |
| 21,900.00 | — | Due from Hermitage and Gulf States |
| $235,000.00 | — | Due from Gulf States in lump sum |
| $ 15,000.00 | — | Attorney's fees for trial |
| 5,000.00 | — | Appeal to Court of Appeals |
| 5,000.00 | — | Appeal to Supreme Court |

Costs of court
9% post judgment interest

**AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**