**COLONIAL COUNTY MUTUAL INSURANCE COMPANY,**
Appellant,

v.

**Hector VALDEZ, Appellee.**

**No. 13–98–540–CV.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 2000.

**516**

Jessie A. Amos, Richard H. Grafton, Austin, for Appellant.

Richard E. Zayas, Brownsville, for Appellee.

Before Justices DORSEY, CHAVEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice DORSEY.

Appellant Colonial County Mutual Insurance Company (Colonial) appeals from a trial court judgment in favor of Hector Valdez on his claims against Colonial for violations of the Deceptive Trade Practices Act (DTPA) and the Insurance Code. We reverse the damage award for additional damages, reform the trial court's judgment to reflect that reduction in damages and, as reformed, affirm.

### FACTS

Hector Valdez bought a 1992 Plymouth Acclaim in November 1994, and arranged insurance for the car with Colonial through the Diego Luna Insurance Agency. An employee of the insurance agency told Hector that the car was insured "against theft, against accidents, against medical expenses, everything concerning the insurance." A few months after obtaining this insurance, Hector sold the car to his son, Rene Valdez, for $7,000. Rene obtained a loan from Mercantile Bank in order to make the purchase. Hector called the Diego Luna Insurance Agency and told them Mercantile Bank would be calling them to make "changes" and "arrangements" on the insurance. Diego Luna testified that an employee of Mercantile Bank did call, and asked to verify insurance on the car for "a Mr. Valdez." The bank was told that "Mr. Valdez" had insurance. Hector continued to pay insurance premiums on the car while Rene owned it. It is undisputed that Hector never told Colonial or Diego Luna Insurance Agency that he had sold the car to Rene. It is also undisputed that Hector was never informed, orally or in writing, that he could only insure the car if he owned it.

In November 1995 Hector's policy was automatically renewed. On January 14, 1996 the car was stolen. Hector reported the theft and Colonial proceeded to investigate. During this investigation, Colonial discovered that Rene was the owner of the car. On March 19, 1996 Colonial sent Hector a letter informing him that "the handling of this claim is being conducted under a Reservation of Rights" because Colonial was investigating whether Hector had an "insurable interest" in the car. On April 5, 1996 Colonial filed a declaratory judgment action in Travis County to determine whether Hector had an insurable interest in the car. In a summary judgment dated August 11, 1997, the Travis County trial court ruled that Hector did not have an insurable interest.

The instant case was tried in February 1998, and the jury heard evidence regarding the Travis County summary judgment in Colonial's favor. In June 1999, the Third Court of Appeals reversed the Travis County declaratory judgment, holding that Colonial had failed to establish as a matter of law that Hector did not have an insurable interest, and remanded for further proceedings. *See Valdez v. Colonial County Mut. Ins. Co.*, 994 S.W.2d 910 (Tex.App.—Austin 1999, pet. denied).

In the instant case, the jury found that Colonial had engaged in a false, misleading, or deceptive act or practice under the Deceptive Trade Practices Act, had engaged in an unfair or deceptive act under section 21.21 of the Texas Insurance Code[1] and had engaged in this conduct knowingly. Hector was awarded $20,000 for mental anguish, $11,500 in attorney fees for the Travis County lawsuit, $6,500 for lost benefit of the bargain, $8,000 in attorney fees for the instant case, and $76,000 in additional damages premised on the finding that Colonial had acted knowingly. On appeal, Colonial contends that the jury's findings on liability and damages are not supported by legally or factually

sufficient evidence, and that the trial court erred in denying its motion to transfer venue.

### FAILURE TO DISCLOSE UNDER THE DTPA

■ Colonial argues that the evidence is legally and factually insufficient to support claims that it violated the DTPA or insurance code by failing to disclose information. We first address Colonial's challenge to the jury's finding under 17.46(b)(23) of the DTPA which defines "false, misleading, or deceptive acts or practices" to include:

the failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

TEX.BUS.COM.CODE ANN. § 17.46(b)(23) (Vernon Supp.2000).

Colonial argues that a mere nondisclosure of material information is not enough to establish DTPA liability under that definition. *See Century 21 Real Estate Corp. v. Hometown Real Estate Co.*, 890 S.W.2d 118, 126 (Tex.App.—Texarkana 1994, writ denied). We agree.

■ Under the plain language of 17.46(b)(23), the failure to disclose known information concerning goods or services is only a violation if it was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. TEX.BUS. COM.CODE ANN. § 17.46(b)(23); *accord Century 21 Real Estate*, 890 S.W.2d at 126. To prove a DTPA action for failure to disclose, a plaintiff must show the following:

1. A failure to disclose information concerning goods or services;

2. Which was known at the time of the transaction;

---

1. In this case, the jury was asked whether Colonial had violated Texas Insurance Code

article 21.21 § 4(1); § 4(2); § 4(10)(i, iv, v(A), v(B)); and § 4(11)(a,b,c,e).

3. Which was intended to induce them into a transaction; and

4. That they would not have entered into the transaction if the information had been disclosed.

*Kessler v. Fanning,* 953 S.W.2d 515, 521 (Tex.App.—Fort Worth 1997, no pet.).

There is no evidence that the company failed to disclose information with the intent to induce Valdez into entering the contract. The matter that was not disclosed that became material was the necessity of Valdez to maintain an "insurable interest" in the car in order to recover on the policy. He was not told that if he sold the car, or otherwise lost his interest in the vehicle, he would no longer be covered. We find absolutely no evidence in the record that the company knew or should have known that Valdez intended, thought about, or even considered selling his car, so that information about the necessity of an "insurable interest" would become important to the sale of the policy.

■ For a failure to disclose to become actionable under this portion of the DTPA, it must be done with the intent to induce the purchaser to buy. Valdez did not tell the company of his intention to sell the car and keep the policy, or that such matters were material at the time the policy was purchased. We find no evidence that the withholding of information about the necessity of the policy holder having an "insurable interest" in the insured property was done with the intention of inducing Valdez to buy the policy.

Accordingly, there is no evidence to support recovery under section 17.46(b)(23) of the DTPA.

### HARMLESS ERROR

■ Having so held, we now must determine whether submission of a single faulty theory of liability will require reversal. We hold that, because liability was found under an additional question that would justify imposition of the entire award of damages, the error is harmless.

Texas Rule of Appellate Procedure 44.1(a) states that no judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:

(1) probably caused the rendition of an improper judgment; or

(2) probably prevented the appellant from properly presenting the case to the court of appeals.

Tex.R.App.P. 44.1. We hold that submission of the faulty theory in the DTPA question was harmless because the jury charge also contained a separate question regarding liability under the insurance code that was sufficient, alone, to justify the award of damages. Accordingly, submission of the incorrect liability theory was harmless error.

Three liability questions were submitted to the jury. The first related to the DTPA causes of action, and included four alternative liability theories. The question read:

Did Colonial County Mutual Insurance Company engage in any false, misleading, or deceptive act or practice that Hector Valdez relied upon to his detriment and was a producing cause of damages to Hector Valdez?

"Producing cause" means an efficient, exciting, or contributing cause that, in a natural sequence, produced the damages, if any. There may be more than one producing cause.

"False, misleading, or deceptive act or practice" means any of the following:

(a) Filing suit founded upon a written contractual obligation of and signed by the defendant to pay money arising out of or based on a consumer transaction for goods, services, loans, or extensions of credit intended primarily for personal, family, household, or agricultural use in any county other than in the county in which the defendant resides at the time of the commencement of the action

or in the county in which the defendant in fact signed the contract; or

(b) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not; or

(c) Representing that an agreement confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited by law; or

(d) The failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

Answer "Yes" or "No".

Answer: *YES*

This Court has held that subsection (d) is an invalid basis for liability in this case—*i.e.*, no evidence supports an affirmative finding under that theory. Accordingly, because this Court is unable to determine whether the liability finding under this question was based on this improper theory or on one of the proper theories, *Casteel* would require reversal of the verdict if question one was the only liability question submitted to the jury. *See Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 386–89 (Tex.2000).

In *Casteel,* like the instant case, the theories of liability under the DTPA were submitted to the jury alternatively. Four of the thirteen theories were found to be legally defective. The Texas Supreme Court held that in such circumstances, the error of submitting legally defective liability theories to the jury is harmful error. It reasoned:

It is fundamental to our system of justice that parties have the right to be judged by a jury properly instructed in the law. Yet, when a jury bases a finding of liability on a single broad-form question that commingles invalid theories of liability with valid theories, the appellate court is often unable to determine the effect of this error. The best the court can do is determine that some evidence could have supported the jury's conclusion on a legally valid theory. To hold this error harmless would allow a defendant to be held liable without a judicial determination that a factfinder actually found that the defendant should be held liable on proper, legal grounds. *See* Muldrow & Underwood, *Application of the Harmless Error Standard to Errors in the Charge,* 48 BAYLOR L.REV. 815, 838–40 (1996); Dorsaneo, *Broad–Form Submission of Jury Questions and the Standard of Review,* 46 S.M.U.L.REV. 601, 634–36 (1992). Accordingly, we hold that when a trial court submits a single broad-form liability question incorporating multiple theories of liability, the error is harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory.

It is essential that the theories submitted be authorized and supported by the law governing the case. If they are not, the appellate court must, at a minimum, be able to determine whether properly submitted theories constituted the basis of the jury's verdict. Here, four of the thirteen theories in the single liability question were improperly submitted because they required that Casteel be a consumer. Yet the language of these theories was altered to remove any reference to their consumer-status requirements. Thus, the jury was confronted with four liability theories available only to consumers, but was given no indication that Casteel was required to be a consumer to succeed under any of

them. Given these facts, it is possible that the jury based Crown's liability solely on one or more of these erroneously submitted theories. At any rate, it is impossible for us to conclude that the jury's answer was not based on one of the improperly submitted theories.

*Casteel,* at 388–89.

However, the court also noted that in certain circumstances, submission of a faulty theory might be harmless "when questions are submitted in a manner that allows the appellate court to determine that the jury's verdict was actually based on a valid liability theory." *Casteel,* at 389–90. In the present case, the jury's affirmative finding on liability under the insurance code renders the finding under the defective DTPA question immaterial.

Two additional questions regarding liability were submitted to the jury along with the DTPA question we have held to be defective. The second question asked whether Colonial County engaged in any unconscionable action or course of action. The jury answered "No" to this question. The third question related to liability under the Insurance Code. It stated:

Did Colonial County Mutual Insurance Company engage in any unfair or deceptive act or practice?

"Unfair or deceptive act or practice" means any of the following:

a. Making or causing to be made any statement misrepresenting the terms, benefits or advantages of an insurance policy; or

b. Making, or directly or indirectly causing to be made, an assertion, representation, or statement with respect to insurance that was untrue, deceptive, or misleading; or

c. Misrepresenting to a claimant a material fact or policy provision relating to the coverage at issue; or

d. Failing to provide promptly to Plaintiff, Hector Valdez, a reasonable explanation of the factual and legal basis in the policy for an insurer's denial of the claims; or

e. Failing to affirm or deny coverage of a claim within a reasonable time; or

f. Failing to submit a reservation of rights letter to Plaintiff within a reasonable time; or

g. Making any misrepresentation relating to an insurance policy by:

(a) Making any untrue statement of a material fact; or

(b) Failing to state a material fact that is necessary to make other statements not misleading, considering the circumstances under which the statements are made; or

(c) Making any statement in such a manner as to mislead a reasonably prudent person to a false conclusion of material fact; or

(d) Failing to disclose the full terms of the policy.

Answer "Yes" or "No".

Answer: *YES*

The damages question asked what amount of damages would compensate Valdez for Colonial's conduct described in either question one, two, or three. Actual damages were awarded for mental anguish, attorneys' fees for the declaratory judgment action and loss of the benefit of the bargain. Attorneys' fees were also awarded. Because these damages are the same whether they are considered to be compensation for the DTPA violations or the to be compensation for the insurance code violations, we hold that submission of the defective DTPA question did not cause rendition of an improper judgment. *See* Tex.R.App.P. 44.1. Because we have held that the DTPA question contained an invalid theory of liability and thus, could not form the basis for the judgment, we will restrict our remaining analysis to Colonial's liability under the insurance code and disregard the remaining points relating to Colonial's DTPA liability.

## FAILURE TO DISCLOSE UNDER THE INSURANCE CODE

■ Colonial also argues that the plaintiff's insurance code claims based on failures to disclose fail for the same reasons. We disagree. The insurance code prohibits the making of any misrepresentation relating to an insurance policy by:

- Failing to state a material fact that is necessary to make other statements not misleading, considering the circumstances under which the statements are made; or
- Making any statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact; or
- Failing to disclose the full terms of the policy.

TEX.INS.CODE ANN. art. 21.21, § 4(11)(b), (c), (e) (Vernon Supp.2000). We hold that Colonial's failure to disclose to Valdez the fact that his car would not be insured if he transferred the title to his son is actionable under these sections.

Colonial made statements in the policy itself that indicated that the vehicle was covered. Nothing in the policy indicated that the vehicle would not be covered because of the transfer. Also, while Valdez did not know for certain whether the insurance company had been advised of the transfer to his son, he instructed the bank to contact the insurance company to verify coverage on the car at the time of the transfer. He was reasonable in assuming that the bank's representative advised the insurance company of the transfer, that being the fundamental reason that the bank was verifying coverage. Under these circumstances, Colonial's actions violated the insurance code sections listed above.

First, Colonial failed to state the material fact that transfer of title would void the insurance coverage. Statement of that material fact was necessary to make not misleading the terms in the policy showing the coverage to be effective. Thus, liability under section 4(11)(b) is appropriate.

TEX.INS.CODE ANN. art. 21.21, § 4(11)(b) (Vernon Supp.2000). Also, Colonial's failure to state, either orally or in writing, that transfer of title would void the coverage would have misled a reasonably prudent person to the false conclusion that the car was covered after the transfer. The fact that the policy itself indicated that the vehicle was still covered, and the fact that the insurance company apparently verified to the bank that the car was covered after the transfer makes this argument even more compelling. This gives rise to liability under section 4(11)(c). TEX.INS.CODE ANN. art. 21.21, § 4(11)(c) (Vernon Supp .2000). Finally, under section 4(11)(e), it is a violation to fail to disclose the full terms of the policy. Colonial's conduct violated the plain meaning of this provision. Thus, we hold that the evidence is legally sufficient to support a finding of insurance code violations based on Colonial's failure to disclose information.

## BREACH OF CONTRACT

Colonial also argues that any claim for misrepresentation under the insurance code must fail because it amounts to merely a claim for breach of contract to pay benefits. The supreme court has held that an allegation that the defendant has breached a contract does not, without more, constitute a violation of the DTPA. *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex.1996). At least one court has extended this doctrine to insurance code violations under the same reasoning. *See Gulf States Underwriters of La., Inc. v. Wilson*, 753 S.W.2d 422, 430 (Tex.App.— Beaumont 1988, writ denied).

On the contrary, we find that Valdez's complaints relate to the impression created by the policy and the conduct of Colonial's agents, and not to the fact that the policy did not cover his vehicle after he sold it to his son. Valdez is not suing on the basis that Colonial breached its promise to cover his vehicle. That issue was covered in the declaratory judgment action. Rather, Valdez here seeks compensation for the dam-

ages flowing from the fact that Colonial sold him a policy that appeared to cover his vehicle when it did not. The insurance code sets forth specific conditions relating to an insurance policy contract that give rise to a cause of action. We reject Colonial's contention that Valdez's suit amounts to nothing more than a breach of contract suit.

### UNFAIR SETTLEMENT PRACTICE

██ Next, Colonial argues that there is no evidence that it committed an unfair settlement practice as defined by the insurance code. In that regard, the jury was asked whether Colonial:

● Failed to promptly provide Valdez with a reasonable explanation of the factual and legal basis in the policy for its denial of his claim;

● Failed to affirm or deny coverage within a reasonable time; or

● Failed to submit a reservation of rights letter to Valdez within a reasonable time.

*See* TEX.INS.CODE ANN. art. 21.21, § 10(iv), § 10(v)(A), § 10(v)(B) (Vernon Supp.2000).

Colonial argues that it did not timely notify Valdez of acceptance, rejection, or the inability to accept or reject his claim because Valdez did not send to it all items,

statements and forms that Colonial required in order to do so. *See* TEX.INS.CODE ANN. art. 21.55, § 3(a),(c), (d) (Vernon Supp.2000). Valdez argues that the terms "promptly" and "within a reasonable time" should be interpreted in light of the deadlines set out in section 21.55 of the Texas Insurance Code.[2] During the presentation of his case, Valdez presented evidence of the deadlines in article 21.55 to the jury. If these deadlines apply, it is undisputed that Colonial failed to satisfy them. However, Colonial contends that these deadlines were never triggered because Valdez failed to provide all the materials and information requested in a letter sent to him by Colonial on January 17, 1996. The January 17 letter asked Valdez to provide:

(1) A completed Theft Statement form;

(2) A Power of Attorney Document;

(3) A completed Proof of Loss form;

(4) Copies of Vehicle Service Records;

(5) Recent Photographs of the vehicle;

(6) A copy of the Bill of Sale or a Licence Registration Receipt;

(7) Negotiable Title or a copy of the title;

(8) All sets of keys to the vehicle.

Valdez provided the Theft Statement form, the Power of Attorney, and the Proof of Loss form. He did not provide items 4–8.

---

2. Section 21.55 provides:

Section 3. (a) Except as provided by Subsections (b) and (d) of this section, an insurer shall notify a claimant in writing of the acceptance or rejection of the claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer, in order to secure final proof of loss.

(b) If the insurer has a reasonable basis to believe that the loss results from arson, the insurer shall notify the claimant in writing of the acceptance or rejection of the claim not later than the 30th day after the date the insurer receives all items, statements, and forms required by the insurer.

(c) If the insurer rejects the claim, the notice required by Subsections (a) and (b) of this section must state the reasons for the rejection.

(d) If the insurer is unable to accept or reject the claim within the period specified by

Subsection (a) or (b) of this section, the insurer shall notify the claimant, not later than the date specified under Subsection (a) or (b), as applicable. The notice provided under this subsection must give the reasons the insurer needs additional time.

(e) Not later than the 45th day after the date an insurer notifies a claimant under Subsection (d) of this section, the insurer shall accept or reject the claim.

(f) Except as otherwise provided, if an insurer delays payment of a claim following its receipt of all items, statements, and forms reasonably requested and required, as provided under Section 2 of this article, for a period exceeding the period specified in other applicable statutes or, in the absence of any other specified period, for more than 60 days, the insurer shall pay damages and other items as provided for in Section 6 of this article.

TEX.INS.CODE ANN. art. 21.55 § 3 (Vernon Supp.2000).

Colonial argues that, because Valdez failed to supply these documents, it never received "all items, statements, and forms required by the insurer to secure final proof of loss." *See* TEX.INS.CODE.ANN . art. 21.55 § 3(a) (Vernon Supp.2000). We are unaware of any Texas case examining what documents are "required by the insurer to secure final proof of loss" for purposes of triggering the deadlines in section 3 of article 21.55.

We hold that items 4–8 demanded by Colonial were not required to secure final proof of loss. Colonial presented no evidence and has offered no argument explaining why it required these materials. Common sense indicates that materials such as service records, sets of keys, and photographs of the vehicle are irrelevant to proving the loss of the vehicle. Therefore, Valdez's failure to provide these materials did not excuse Colonial from complying with the deadlines in article 21.55. The jury could have rightfully concluded that Colonial's failure to comply with these deadlines constituted failing to affirm or deny coverage within a reasonable time and failing to promptly provide the insured with an explanation for the denial of his claim. We overrule Colonial's argument that no evidence existed to support the jury's findings that it engaged in unfair settlement practices under the insurance code.

### MISREPRESENTATION CLAIMS UNDER THE INSURANCE CODE

■ Colonial also argues that the evidence was insufficient to establish a claim for misrepresentation under the insurance code. The jury was asked whether Colonial violated the following provisions of the insurance code by:

●making or causing to be made any statement misrepresenting the terms, benefits, or advantages of an insurance policy;

●making, or directly or indirectly causing to be made, an assertion, representation, or statement with respect to in-surance that was untrue, deceptive, or misleading;

●misrepresenting to a claimant a material fact or policy provision relating to the coverage at issue; or

●making any misrepresentation relating to an insurance policy by ... making any untrue statement of a material fact.

*See* TEX.INS.CODE ANN. art. 21.21 § 4(1), § 4(2), § 4(10)(i); § 4(11)(a) (Vernon Supp. 2000).

Colonial cites *Moore v. Whitney–Vaky Ins. Agency,* 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet.) and *Sledge v. Mullin,* 927 S.W.2d 89, 94 (Tex. App.—Fort Worth 1996, no writ) for the proposition that in the absence of an affirmative misrepresentation, a mistaken belief about the scope of coverage is not actionable. We find those cases to be distinguishable from the situation at hand.

In *Moore v. Whitney–Vaky,* Moore sought to impose liability under the insurance code for the being sold a general commercial liability policy that did not cover employee lawsuits for retaliatory discharge. *Moore,* 966 S.W.2d at 691. Moore thought when he bought liability insurance that he was being covered for any liability that may occur, but admitted that the insurance agent never told him that the liability policy would cover all lawsuits against him. *Id.* The appellate court held that there was no cause of action for misrepresentation under the insurance code under these facts because no affirmative misrepresentation was made. *Id* . at 692–93.

Moore contended that he should have been informed of the provisions of the policy, and the agent never told him what was in the policy. *Id.* at 691. Moore admitted, though, that he never asked the agent to tell him what the policy covered, nor did he recall any conversations with McLain about the coverages he wanted prior to obtaining the policy. *Id.* In fact, the parties stipulated that the sole issue to be determined by the trial court was

whether, as a matter of law, a duty existed on the part of the insurance company or agent to advise Moore whether or not that type of coverage would be provided under the policy. *Id.* The court held that a claim based solely on the insured's mistaken belief about the scope of coverage would fail under the insurance code in the absence of some specific misrepresentation by the insurer or agent about the insurance. *Id.* at 692–93.

However, in Valdez's case, the policy itself indicated that the vehicle was insured at the time the claim arose. That amounts to an affirmative misrepresentation. In *Moore,* the policy itself indicated that it did not cover retaliatory discharge actions.

*Sledge v. Mullin* is also readily distinguishable. *Sledge,* 927 S.W.2d 89. In that case, Ruby Sledge sold her car to her son. *Id.* at 90–91. She called her insurance agent and told him to substitute a new car for the car she sold to her son on her auto insurance policy that covered several cars. *Id.* When her son wrecked the car she had sold to him, she sued her insurance agent alleging that he should have told her that the car would no longer be covered and should have told her how to extend coverage for the car she sold. The Fort Worth Court of Appeals held that there was no cause of action for misrepresentation under the insurance code for such conduct. *Id.* at 94–95. It stated: "As a matter of law, we hold that by doing exactly what Ruby asked him to do, substituting the Citation for the Nova, [the agent] did not violate . . . sections . . . of the Texas Insurance Code." *Id.* at 94.

Mrs. Sledge sought to impose a duty on the insurance agent to suggest alternatives before following her instruction to delete a car from a policy. The court stated that "[Mrs. Sledge]'s reliance, if any, on [the agent] to advise her of her insurance needs is not proof of a misrepresentation or deceptive trade practice by Mullin." *Id.* at 94. Like the court in *Moore,* the *Sledge* court held that an affirmative misrepresen-

tation is required for a violation, and a mere mistake on the part of the policyholder regarding the scope or availability of coverage will not give rise to a cause of action for misrepresentation. *Id.* at 93.

We have already found the equivalent of an affirmative misrepresentation in Valdez's case. When an insurance policy that is paid up and in effect at the time of the claim plainly states that it covers the automobile in question, and no other part of that policy states that a basis for exclusion of that vehicle exists, we believe the policy itself creates a false impression. In this case, statements in the declarations page of the insurance policy say that coverage is provided for the "named insured." The named insured is "Hector Valdez." The policy says coverage is provided for "any vehicle shown on the declarations page." The only vehicle on the declarations page is the 1992 Plymouth Acclaim.

The cause of action based on the misrepresentation of the policy is predicated on the representations that Valdez was the insured and the 1992 Acclaim that was later stolen was the "covered vehicle." When the vehicle was stolen and the insured made a claim under the policy, it was refused on the previously undisclosed reason that Hector, because he no longer owned the car, did not have an insurable interest. This defense was not disclosed to Hector when he bought the policy.

The declarations page stated explicitly what the agreement was between the parties: that Hector Valdez was the insured and the 1992 Plymouth Acclaim was the covered vehicle. This is exactly what Hector was led to believe when he bought the insurance policy. Hector does not complain of "tricky" language in the declarations that misled him; in such an instance it would be necessary to show he relied on the ambiguous wording, and to do that he would have to know what it was.

Here the misrepresentations were that he was the insured and the 1992 Acclaim was the covered vehicle, which the declara-

tions page confirmed. Hector's cause of action is based on those two misrepresentations: that he was the insured and that car was covered. After the theft occurred and he made a claim for the loss, the defendant took the position that although he was the named insured and the covered vehicle was stolen, he still lost. Coverage was denied because of an undisclosed technicality.

We believe this factual scenario fits squarely within the insurance code sections prohibiting: making a statement misrepresenting the terms, benefits, or advantages of an insurance policy, *see* TEX.INS. CODE ANN. Art. 21.21 § 4(1) (Vernon Supp .2000); making an assertion, representation, or statement with respect to insurance that was untrue, deceptive, or misleading, *see id.* at § 4(2); and making a misrepresentation relating to an insurance policy by making an untrue statement of a material fact. We overrule Colonial's point of error and hold that the evidence is sufficient to support a cause of action for misrepresentation under the insurance code sections that were submitted to the jury.

## "KNOWING" CONDUCT

■ Colonial also contends that the evidence is insufficient to support the jury's finding that it acted "knowingly" when committing the wrongful conduct under the insurance code. The insurance code defines "knowingly" to mean "actual awareness of the falsity, unfairness, or deception of the act or practice made the basis for a claim for damages under … this Article." TEX.INS.CODE ANN. art. 21.21, § 2(c) (Vernon Supp.2000). The statute also provides that " 'actual awareness' may be inferred where objective manifestations indicate that a person acted with actual awareness." *Id.* We agree that the plaintiff produced no evidence to show that Colonial acted knowingly. Plaintiff conceded that he did not personally advise Colonial that he had sold the car to his son.

Therefore, Colonial could not have knowingly made the misrepresentations regarding whether the car would be covered in that event. Also, without knowledge that the failure to disclose the fact that transfer would void coverage, Colonial could not have knowingly failed to disclose information with any awareness of the "falsity, unfairness, or deception of the act or practice." *Id.* The only theories of liability that Colonial could have committed "knowingly" were the "unfair settlement practices" theories. Under those, Valdez charged that Colonial failed to provide a prompt, reasonable explanation of the factual and legal basis in the policy for its denial of the claim, failed to affirm or deny coverage within a reasonable time, or filed to submit a reservation of rights letter to him within a reasonable time. The supreme court has explained that:

> "Actual awareness" does not mean merely that a person knows what he is doing; rather, it means that a person knows that what he is doing is false, deceptive, or unfair. In other words, a person must think to himself at some point, "Yes, I know this is false, deceptive, or unfair to him, but I'm going to do it anyway."

*St. Paul Surplus Lines Ins. Co., Inc. v. Dal–Worth Tank Co., Inc.,* 974 S.W.2d 51, 53–54 (Tex.1998). Valdez presented no evidence that Colonial's actions in settling his claim were taken with any intention to deceive or treat him unfairly or give him false information. We sustain Colonial's point of error and hold the evidence is insufficient as a matter of law to find knowing conduct.

## DAMAGES

■ Finally, Colonial contests the jury's award of damages. First, Colonial contends there is no evidence to support the jury's award of $20,000 for mental anguish damages. We disagree.

■ We review the award of mental anguish damages by a sufficiency of the

evidence standard. *See Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641–42 (Tex. 1987). Where there is direct evidence of the nature, duration, and severity of a plaintiff's anguish which establishes a substantial disruption in their daily routine, we must sustain an award of damages for mental anguish. *See Parkway Co. v.. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995). Direct evidence may be in the form of the plaintiff's own testimony, that of a third party or that of an expert. *Id.* While direct evidence is not required, it is preferred. *See id.* We hold that Valdez provided direct evidence showing that the nature, duration, and severity of his mental anguish created a substantial disruption of his daily routine.

Valdez testified that he felt deceived, "very mad," and powerless. He said that this affected his health in the form of high blood pressure and sleeping disorders. We hold this evidence to be sufficient, and refuse to disturb the jury's award of mental anguish damages. *Cf. Vickery v. Vickery*, 999 S.W.2d 342, 378 (Tex.1999) (holding plaintiff's testimony that she "didn't eat," "didn't sleep," "cried all the time," and was very emotionally disturbed, devastated and worried about her family was sufficient to support an award of mental anguish damages); *Texas Animal Health Com'n v. Garza*, 27 S.W.3d 54, 63 (Tex. App.—San Antonio 2000)(finding evidence of mental anguish sufficient where wife offered testimony that plaintiff was irritable, depressed, stressed, and suffered weight gain, weight loss, sleeplessness and a breakout of hives); *Robertson County v. Wymola*, No. 03–99–00328–CV, 17 S.W.3d 334 (Tex.App.—Austin 2000) (holding direct testimony from plaintiff regarding mental anguish sufficient); *Reyna v. Safeway Managing General Agency for State*, 27 S.W.3d 7, 23–24 (Tex.App.—San Antonio, 2000) (same); *Texas Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 394–95 (Tex. App.—Dallas, 2000) (holding evidence that plaintiff "felt bad" insufficient for an award of mental anguish, but evidence that co-plaintiff was terrified, felt devastated, could not sleep, and dramatically reduced participation in church activities was sufficient); *Norwest Mortgage, Inc. v. Salinas*, 999 S.W.2d 846, 862 (Tex.App.—Corpus Christi 1999, no pet.) (finding evidence that plaintiff suffered stomach cramps, was unable to eat or sleep and felt "desperate" was sufficient).

## ADDITIONAL DAMAGES

Next, Colonial challenges the jury's award of "additional damages." Additional damages may be awarded under the insurance code and the DTPA when the jury finds the defendant's conduct was "knowing." *See* TEX.INS.CODE ANN. ART. 21.21, § 16(b)(1); TEX.BUS. & COM.CODE ANN. § 17.50(b)(1).[3] Because we have held the evidence to be insufficient to establish Colonial's conduct was "knowing," we will reverse the damages awarded on that basis. Accordingly, this point of error has become moot.

## ATTORNEYS' FEES

■ Next, Colonial County contests the jury's award attorneys' fees of $11,500.00 that were paid for the attorney representing Valdez in the Travis County suit as compensatory damages for Colonial County's misrepresentations and unfair practices. Colonial argues that Valdez would have had to pay for an attorney regardless of whether the coverage suit was filed in Travis County or Cameron County. Thus, the only amount of those attorneys' fees that should be awarded is the amount that represents the additional expenses associated with travel to Travis County to defend the suit. We disagree with this contention.

The crux of Valdez's lawsuit is that he was wrongfully led to believe that a car was insured by Colonial. The jury specifically found that Colonial County engaged

---

3. The jury awarded $152,000.00 in additional damages. The trial court lowered that amount to $76,000.00 in its final judgment entered on the jury's verdict.

in some false, misleading, or deceptive act or practice that Hector Valdez relied upon to his detriment. The insurance code authorizes the recovery of "actual damages" for a violation. TEX.INS.CODE ANN. art. 21.21, § 16(b)(1). If Colonial County had not misrepresented to Valdez that the automobile was covered when it was not, or that it would be covered when in reality it would not, the Travis County lawsuit would never have been necessary. Thus, we hold that the award of all costs for attorneys' fees for that lawsuit was properly awarded as damages in this misrepresentation suit.

### DAMAGES FOR LOSS OF BENEFIT OF THE BARGAIN

■ Finally, Colonial contends that the jury's award of $6,500.00 for "loss of benefit of the bargain" was improper. They offer no legal support for this argument. Their argument is, essentially, that Valdez received everything he bargained for. We believe that the jury's award of $6,500.00 was appropriate which represented the amount the Valdez would have to pay for the uninsured stolen car because it was not insured. The charge instructed that "loss of benefit of the bargain" means the difference in the value of the policy as it was received and the value it would have had if it had been as represented. We overrule Colonial's point of error.

### VENUE

■ In conclusion, we address Colonial's venue issue. Before the trial court, Valdez asserted that venue was proper in Cameron County because a substantial part of the events or omissions giving rise to the claim occurred in Cameron County. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 15.002(a)(1) (Vernon Supp.2000). In reviewing the trial court's venue determination, we consider the entire record, including the trial on the merits. TEX.CIV.PRAC. & REM.CODE ANN. § 15.064(b) (Vernon 1986); *Ruiz v. Conoco*, 868 S.W.2d 752, 758 (Tex. 1993). The trial court's ruling is not reviewed for factual sufficiency of the evidence; rather, if there is any probative evidence in the record that venue was proper in the county where judgment was rendered, then the appellate court must uphold the trial court's venue determination. *Ruiz*, 868 S.W.2d at 758. In conducting this review, we must view all the evidence in the light most favorable to the trial court's ruling. *Id.*

In this case, Valdez purchased his insurance in Cameron County, and the alleged misrepresentations were made to him in Cameron County. Valdez's policy was processed at Colonial's home office in Travis County. The car was stolen in Cameron County, and Valdez made his claim on the policy from Cameron County. Colonial arranged from Travis County for an agent to investigate the claim in Cameron County. Letters concerning Colonial's handling of the claim were sent from Travis County to Cameron County. Valdez's responses were sent from Cameron County to Travis County. The decisions to file a declaratory judgment action and to ultimately deny Valdez's claim were made in Travis County.

We conclude that the record contains probative evidence that a substantial part of the events or omissions giving rise to the claim occurred in Cameron County. Therefore, we find no reversible error in the trial court's determination that venue was proper in Cameron County.

We REFORM the judgment, deleting the award for additional damages of $76,000, and as REFORMED, AFFIRM.