**KW CONSTRUCTION, Appellant,**

v.

**STEPHENS & SONS CONCRETE CONTRACTORS, INC.,**
**Appellee.**

No. 06–04–00093–CV.

Court of Appeals of Texas,
Texarkana.

Submitted April 13, 2005.

Decided June 8, 2005.

Philip D. Alexander, Curtis, Alexander, McCampbell & Morris, PC, Emory, for appellant.

Elizann Carroll, Juneau, Boll & Ward, Addison, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

KW Construction appeals the judgment entered following a bench trial in which plaintiff, Stephens & Sons Concrete Contractors, Inc., recovered $12,500.00, plus

pre- and post-judgment interest and $7,500.00 in attorney's fees in its suit for breach of an oral contract or, in the alternative, under a theory of quantum meruit. Stephens & Sons alleged there existed an oral contract between the parties in which the parties agreed that Stephens & Sons would repair and construct certain concrete structures under a general contract awarded to KW Construction by the Sabine River Authority (SRA) to construct an office complex in Rains County. After a payment dispute went unresolved, Stephens & Sons brought suit in Lamar County. KW Construction unsuccessfully moved the trial court to transfer the case to Rains County. On appeal, KW Construction complains of the trial court's refusal to transfer the case. KW Construction also contends there is legally and factually insufficient evidence to support both the conclusion that an oral contract was formed between the parties and the trial court's finding of $12,500.00 as the reasonable value of work performed. We will affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

KW Construction is a sole proprietorship owned by Kenneth Brown, with its primary place of business in Rains County. KW Construction was awarded the general contract for the SRA to build an office complex in Rains County. The original concrete subcontractor left the job before completion of the concrete work. The work that had been completed to that point was unacceptable because it was not level.

In 1999, Brown contacted Todd Stephens of Stephens & Sons Concrete Contractors, Inc. to discuss the task of repairing and completing the concrete work.

Brothers Todd and Paul Stephens[1] traveled from the company's office in Lamar County to meet with Brown and Steve Hunt and to assess the project at the job site in Rains County. After the site inspection, the men met at Brown's house in Rains County to further discuss the project.

Initially, Stephens and Brown agreed that Stephens & Sons would "cap" the defective slab, if the SRA approved the procedure, and complete the remaining concrete work. The "capping" process would have taken approximately two to three days to complete. According to Stephens' testimony, he and Brown agreed that the price associated with the "capping" process would not exceed $18,000.00, the amount representing the remainder of the amount KW Construction had budgeted for construction work on the SRA project. A few days later, Brown called Stephens at his office in Lamar County to inform him that the SRA had rejected the "capping" process as a repair. During this telephone conversation, the two agreed instead that Stephens & Sons would grind and level the existing 5,568 square feet of defective concrete slab, a more difficult and more expensive process than "capping." In addition, Stephens & Sons was to pour approximately 200 square feet of structural slab; pour 2,352 square feet of sidewalk, mechanical pad, and porch; and pour 916 linear feet of curb and gutter.

A dispute concerning payment arose and, eventually, Stephens & Sons left the job incomplete for nonpayment, having substantially completed the grinding and leveling of the defective concrete slab and having poured approximately 100 linear feet of curb and gutter, 215 square feet of porch, and 200 square feet of structural

---

1. Paul Stephens testified his involvement in this project was limited to the interaction during that first meeting. For this reason, subsequent references to "Stephens" will mean Todd Stephens unless otherwise noted.

slab. The payment dispute continued and resulted in litigation. Stephens & Sons brought suit in Lamar County against KW Construction to recover funds owed to Stephens & Sons under an oral contract or, alternatively, under a theory of quantum meruit. KW Construction unsuccessfully moved the trial court to transfer the case to Rains County.

## II. VENUE

### A. Permissive Venue and Review of Ruling on Motion To Transfer Venue

▮ First, we note that a substantial part of the events or omissions giving rise to a claim may occur in more than one county. *See S. County Mut. Ins. Co. v. Ochoa,* 19 S.W.3d 452, 458 (Tex.App.-Corpus Christi 2000, no pet.). Plaintiffs are accorded the right to choose venue first as long as suit is initially filed in a county of proper venue. *Wilson v. Tex. Parks & Wildlife Dep't,* 886 S.W.2d 259, 261 (Tex. 1994). When the county in which the plaintiff files suit is at least a permissive venue and when no mandatory provision applies, the plaintiff's venue choice cannot be disturbed. *See id.; Chiriboga v. State Farm Mut. Auto. Ins. Co.,* 96 S.W.3d 673, 677 (Tex.App.-Austin 2003, no pet.). If the parties' dispute involves two counties of permissive venue, transferring the case is improper. *Wilson,* 886 S.W.2d at 262.

▮ Once the plaintiff's choice of venue is challenged, the plaintiff has the burden to present prima facie proof that venue is maintainable in the county of suit. Tex.R. Civ. P. 87(2)(a), (3)(a); *In re Masonite Corp.,* 997 S.W.2d 194, 197 (Tex. 1999). The plaintiff's prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof. *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 757 (Tex.1993); *Chiriboga,* 96 S.W.3d at 678. When ruling on a motion to transfer venue, the trial court must assume the pleadings are true

and decide based on the pleadings and affidavits submitted by the parties. Tex.R. Civ. P. 87; *Chiriboga,* 96 S.W.3d at 678. Venue questions are to be decided based on the "facts existing at the time the cause of action that is the basis of the suit accrued." Tex. Civ. Prac. & Rem.Code Ann. § 15.006 (Vernon 2002). The action must remain in the county of suit if the plaintiff selected a county of proper venue and supported the selection with prima facie proof supporting venue in that county. *Wilson,* 886 S.W.2d at 261.

▮ In such cases involving disputes over permissive venue, we review the entire record for any probative evidence that venue was proper in the original county of suit. *Wilson,* 886 S.W.2d at 262; *Chiriboga,* 96 S.W.3d at 677. In reviewing a venue decision, we must conduct an independent review of the entire record, including, where applicable, the trial on the merits, to determine whether any probative evidence supports the trial court's venue decision. Tex. Civ. Prac. & Rem.Code Ann. § 15.064(b) (Vernon 2002). We review the record in the light most favorable to the venue ruling; however, we give no deference to the trial court's application of the law. *Id.* If there is any probative evidence supporting venue in the county where judgment was rendered, we must affirm the trial court's ruling. *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 471 (Tex.1995); *Chiriboga,* 96 S.W.3d at 677–78. If no such evidence exists, we must reverse the case. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.064(b); *Ruiz,* 868 S.W.2d at 758; *Chiriboga,* 96 S.W.3d at 678.

▮ An appellate court cannot review the sufficiency of the evidence supporting the plaintiff's venue choice. *Ruiz,* 868 S.W.2d at 758. If the record contains any probative evidence supporting venue in the county of suit, a transfer is improper even

if the evidence preponderates to the contrary. *Wilson*, 886 S.W.2d at 262. However, conclusive evidence to the contrary can destroy the "probative evidence."[2] *See Ruiz*, 868 S.W.2d at 757; *Chiriboga*, 96 S.W.3d at 678.

In this case, no mandatory venue provision applies.[3] Therefore, venue here is governed by the general venue rule contained in Section 15.002(a):

(a) Except as otherwise provided by this subchapter or Subchapter B or C, all lawsuits shall be brought:

(1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;

(2) in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;

(3) in the county of the defendant's principal office in this state, if the defendant is not a natural person; or

(4) if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

TEX. CIV. PRAC. & REM.CODE ANN. § 15.002 (Vernon 2002). The language pertinent to the venue issue before us is found in Section 15.002(a)(1), which provides that venue is proper in the county where "all or a substantial part of the events or omissions giving rise to the claim occurred." TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(a)(1). We must determine whether the record contains any probative evidence to support the trial court's implied ruling that "all or a substantial part of" the events giving rise to this suit occurred in Lamar County.

## B. Venue Facts

KW Construction maintains its place of business in Rains County; Stephens & Sons maintains its place of business in Lamar County. The record is clear that Brown first contacted Stephens & Sons by placing a telephone call to Stephens in Lamar County. After the initial telephone conversation, the Stephens brothers traveled to Rains County to assess the project. Brown then again called Stephens' office in Lamar County. The parties disagree as to whether they agreed to a price during this telephone conversation and, if so, on what price they agreed. But it is undisputed that, during this telephone call, the men came to an agreement as to the scope of the work to be done, since Brown informed Stephens that the SRA rejected the "capping" proposal. Instead, the two men agreed during this conversation that Stephens & Sons would grind and level the defective slab.

Subsequently, all the concrete work was performed in Rains County. By affidavit, Stephens stated it was agreed that payment was to be sent to Stephens & Sons in Lamar County. Brown sent to the Stephens & Sons office in Lamar County a check in the amount of $4,717.00 bearing the notation "paid in full." Stephens returned the check. The trial court concluded that the parties agreed that payment would be made in Lamar County.

## C. Former Venue Provision: Accrual of a Cause of Action

Before 1995, the relevant venue provision did not contain a substantiality requirement and, instead, pointed to "the county in which all or part of the cause of

**2.** Specifically, the Texas Supreme Court held "an appellate court must reverse (there cannot be harmless error) if other evidence in the record, even evidence adduced after venue was determined, destroys the prima facie

proof on which the trial court relied." *Ruiz*, 868 S.W.2d at 757.

**3.** *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 15.011–.020 (Vernon 2002).

action accrued." *See Krchnak v. Fulton,* 759 S.W.2d 524, 525 (Tex.App.-Amarillo 1988, writ denied). A "cause of action" consists of a plaintiff's primary right and the defendant's act or omission which violates that right. *Id.* at 526. A "cause of action" comprises every fact which is necessary for a plaintiff to prove in order to obtain judgment. *Id.* The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another, a cause of action has accrued. *Id.* The court in *Krchnak* noted that, as early as 1854, the Texas Supreme Court held that, in a suit for breach of contract, the contract, its performance, and its breach were all essential parts of the cause of action. *Phillio v. Blythe,* 12 Tex. 124, 127–28 (1854); *Krchnak,* 759 S.W.2d at 526.

To illustrate, we look to a case that, although decided under the "all or part" language of the pre–1995 venue provisions, is factually analogous to the case before us. In *Krchnak,* plaintiff Fulton and defendant Krchnak entered into an oral agreement that Fulton would board Krchnak's mare. The mare was to be boarded and services rendered in Lee County. *Krchnak,* 759 S.W.2d at 526. The defendant was a resident of Austin County. *Id.* After Krchnak's failure to pay for Fulton's services, Fulton brought suit in Lubbock County, alleging that the agreement was entered into in Lubbock County and that the agreement provided that payment was to be made in Lubbock County. *Id.*

The essential elements, then, of Fulton's cause of action were that an agreement existed under which services were rendered by appellee for which payment was not made by appellant. *Id.* The court went on to conclude that "[a] part of that underlying contract would be an agreement that payment would be made in Lubbock County." *Id.* Venue was proper in

Lubbock County because the Fulton's prima facie proof showed that the agreement to pay for his services was entered into in Lubbock County and that the contract provided for payment to be made in Lubbock County. *Id.* Again, under the former general rule, the court held that the "cause of action accrued" in Lubbock County. *Id.; see also Whitworth v. Kuhn,* 734 S.W.2d 108, 111 (Tex.App.-Austin 1987, no writ) (cause of action for breach of lease accrued in county where rental payments to be made, although leased premises were in different county).

Both parties rely to an extent on the opinion in *Krchnak.* KW Construction distinguishes the rule in *Krchnak* to support its argument that the place to which KW Construction sent partial payment is not an element of Stephens & Sons' cause of action. Going further, KW Construction points out that no longer is any fact connected to the lawsuit sufficient to establish venue as it was under the venue scheme prior to the 1995 amendments. *See Chiriboga,* 96 S.W.3d at 681. Stephens & Sons relies on the rule in *Krchnak* for the proposition that, if payment under a contract is to be made in a certain county but a party fails to make payment, a cause of action for breach of contract accrues in the county in which payment was to be received. *See Krchnak,* 759 S.W.2d at 526. Stephens & Sons argue that, according to *Krchnak,* the telephone discussions in which Brown first contacted Stephens & Sons and in which the two came to an agreement regarding the scope of the work to be done and Brown's later failure to pay Stephens & Sons in accordance with the terms of the agreement constitute a substantial part of the events giving rise to the breach of contract claim.

From *Krchnak,* we know that a part of a cause of action accrues in the county in

which the agreement was made and payment was to be made. Now we must measure those events in terms of Section 15.002's substantiality requirement. In other words, we must determine whether those events constitute a *substantial* part of the plaintiff's claim.

A more recent case, one decided under the amended venue provision, lends us guidance in this inquiry. *See Kay v. N. Tex. Rod & Custom,* 109 S.W.3d 924, 926 (Tex.App.-Dallas 2003, no pet.). Kay sued North Texas Rod & Custom in Dallas County for breach of contract. *Id.* at 925. North Texas Rod & Custom successfully moved the trial court to transfer the case to Kaufman County, the county in which North Texas Rod & Custom's place of business was located. *Id.* at 926. The trial court concluded no fact supported Kay's choice of venue. *See id.* After reviewing the record, the Dallas Court of Appeals agreed, concluding that no evidence in the record supported Kay's allegation that North Texas Rod & Custom solicited Kay's business by placing a telephone call to Kay's place of business in Dallas County. *Id.* That being the case, the trial court's order transferring the case to Kaufman County was proper. *Id.* The implied holding of *Kay* is that, had there been evidence to support Kay's allegation that North Texas Rod & Custom did contact him by placing a telephone call to Dallas County, such evidence would have been sufficient to support venue in Dallas County, even under the more rigorous standard in the post–1995 general venue scheme.[4] *See id.*

## D. Venue Proper in Lamar County

Applying reasoning similar to that in *Krchnak* to the converse factual situation as that presented in *Kay*, we hold that the record before us contains probative evidence to support the trial court's implied ruling that "all or a substantial part of" the events giving rise to this suit occurred in Lamar County. KW Construction first contacted Stephens & Sons in Lamar County in November 2000 to seek its services. Later, Brown again called Stephens in Lamar County to clarify the scope of work to be done. According to Stephens' testimony, during this conversation, the parties also agreed that the price would be determined on a "time and materials" basis. Further, Stephens stated by affidavit that payment was to be made by Brown to Stephens in Lamar County. The fact that Brown sent a later-rejected $4,717.00 check to Stephens in Lamar County as an attempted payment in full supports the conclusion that payment was to be made to Stephens & Sons in Lamar County.

The elements of a breach of contract claim are (1) existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from the breach. *Id.* at 927. So, in terms of the venue provision and Stephens' claim for breach of contract, the evidence here connects at least two elements—the existence of a contract and the defendant's breach— to Lamar County. We conclude events or omissions pertaining to two elements of Stephens & Sons' breach of contract claim

4. Additionally, the reasoning in *Nat'l Family Care Life Ins. Co. v. Fletcher,* 57 S.W.3d 662, 665 (Tex.App.-Beaumont 2001, pet. denied), supports the conclusion that the place of payment is a relevant consideration in reviewing venue issues involving suits for breaches of contract. In *Fletcher,* the court points out that evidence demonstrated, *inter alia,* that

"appellants issued and [the appellee] received some commission checks in [the county in which the appellee brought suit]" which, along with evidence of other connections to the county in which plaintiff brought suit, was sufficient to constitute probative value to support the finding that venue was proper in the plaintiff's choice of venue. *Id.* at 665–66.

are sufficient to qualify as a "substantial part" of the plaintiff's claim and sufficiently connect the claim to Lamar County. We hold that these facts constitute probative evidence supporting venue in Lamar County. We, therefore, must not disturb the trial court's denial of Brown's motion to transfer venue.

## III. SUFFICIENCY OF THE EVIDENCE TO SUPPORT FINDING OF A CONTRACT

The trial court found that there was an agreement formed between KW Construction and Stephens & Sons. After hearing conflicting evidence as to whether the parties agreed on an amount to be paid for the work done, the trial court also arrived at a figure:

> 2. Stephens & Sons performed good and valuable work on the Project for KW. The reasonable value of that work performed was $12,500.00.

Brown complains there is legally and factually insufficient evidence to support the trial court's findings.

### A. Standards of Review

Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Id.*

In reviewing the legal sufficiency of the evidence, we must consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). Anything more than a scintilla of evidence is legally sufficient to support the finding.

*Id.* When reviewing the factual sufficiency of the evidence, we must consider and weigh all the evidence. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). We must uphold the finding unless we conclude the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

### B. Elements of an Enforceable Contract

Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Buxani v. Nussbaum,* 940 S.W.2d 350, 352 (Tex.App.-San Antonio 1997, no writ). Brown challenges the evidence to support three of the elements: offer, acceptance, and mutual assent.

#### 1. Sufficient Evidence of Valid Offer

Brown contends the evidence is insufficient to show that he made a valid offer to Stephens & Sons. To prove a valid offer, a party must show (1) the offeror intended to make an offer; (2) the terms of the offer were clear and definite; and (3) the offeror communicated the essential terms of the offer to the offeree. *Engelman Irrigation Dist. v. Shields Bros., Inc.,* 960 S.W.2d 343, 352 (Tex.App.-Corpus Christi 1997, pet. denied). If the terms are so vague that the court cannot determine what the parties intended or what terms to enforce, the contract is unenforceable. *See T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992). However, even when the price term is considered lacking, the trial court may imply a reasonable price when all

other elements of a contract have been met. *See Buxani,* 940 S.W.2d at 353. Where the parties have done everything else necessary to make a binding agreement for services, their failure to specify a price does not leave the contract so incomplete that it cannot be enforced. *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.,* 113 S.W.3d 889, 895 (Tex. App.-Dallas 2003, no pet.). In such a case, a presumption arises that a reasonable price was intended. *Pennington v. Gurkoff,* 899 S.W.2d 767, 770 (Tex.App.-Fort Worth 1995, writ denied).

▮▮▮ Stephens and Brown both testified that the parties initially discussed the "capping" option, since it would be a quicker and less expensive remedy. When the SRA rejected that idea, Brown communicated the rejection to Stephens. Stephens and Brown testified that, following this information, the two agreed that grinding and leveling the defective slab would be the method used. Their testimony is also largely consistent in its description of the other work to be done. So, the evidence clearly supports the finding that the two agreed on the scope of the work to be done. Brown concedes there was a oral agreement in his correspondence with Stephens and with KW Construction's bonding agent. He also reiterates this position throughout his testimony. Considering only the evidence tending to support the trial court's ruling, we conclude there is legally sufficient evidence to support the trial court's finding that there was a valid offer made to Stephens & Sons for the repair and completion of the work on KW Construction's SRA project.

Turning to the factual sufficiency of the evidence, we note that the only major disagreement between the parties is the price to be paid to Stephens & Sons for the work to be done. There is conflicting testimony on both the method of calculation and the amount calculated. Stephens tes-

tified that Brown agreed to pay on a time and materials basis. Stephens & Sons billed KW Construction for $15,378.63. Shortly after, in a faxed letter to Stephens & Sons, Brown disputed the calculations and asserted he owed KW Construction $10,237.02. Although it appears Brown used the same time and materials basis in arriving at the $10,237.02, Brown denies such an agreement and stated Stephens agreed that the price would be $12,000.00 for the work to be done. The record also contains testimony from Brown indicating that the parties agreed that the price to grind and level the slab was "not to exceed $18,000." Brown explained that this figure is consistent with the agreement to pay Stephens & Sons $12,000.00, since the parties agreed that KW Construction would furnish the materials, amounting to approximately $6,000.00. The disagreement and uncertainty as to the price, however, does not necessitate the conclusion that there was no valid offer. Having weighed all the evidence, we conclude that the evidence supporting a finding that there was a valid offer is also factually sufficient.

### 2. Sufficient Evidence of Acceptance of Offer

▮▮▮ In a related argument, Brown maintains that the evidence was insufficient to support a finding that Stephens & Sons accepted the offer. An offeree cannot accept an offer to form a contract unless the terms of the offer are reasonably certain. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 846 (Tex.2000).

▮▮▮ For similar reasons as those discussed above, we conclude Stephens could have and, in fact, did accept the offer to repair and complete the concrete work on the SRA project. Considering the evidence tending to support the finding, we see that the two men agreed to essential terms, except for the price. Weighing all

the evidence, we conclude the evidence showing a dispute regarding the price term does not invalidate the acceptance of the offer. Since the trial court has the power to imply a reasonable price, the initial discussion and the subsequent clarification that Stephens & Sons would have to grind and level instead of "capping" the defective slab constituted a valid offer which gave Stephens the right to accept or reject the offer and which Stephens accepted. The evidence is legally and factually sufficient to support the finding that Stephens could and did accept the offer made by KW Construction.

### 3. Sufficient Evidence of Mutual Assent

Finally, Brown argues the evidence was insufficient to support a finding of mutual assent. Specifically, he contends, the parties never came to an understanding as to what Stephens & Sons would be paid for the work to be done.

■■■ As we have previously discussed, the missing price term is not fatal to the contract. *See Buxani*, 940 S.W.2d at 352. To form a binding contract, the parties must have had a "meeting of the minds" on the essential terms of the contract. *See id.* The element of mutual assent may be inferred from the parties' conduct. *Id.* In *Buxani*, the San Antonio Court of Appeals concluded that the appellants assented to the terms of the oral contract based on their conduct, including the fact that they allowed work to begin and continue without objection or question until the appellees billed them for the work. *Id.*

■■ The record in this case contains ample evidence that the two men agreed on the essential terms of the contract. With the exception of a price term, the record demonstrates that the two parties agreed Stephens & Sons would repair the defective slab and complete the remaining

concrete work. Brown concedes the fact that the two entered into an oral agreement on several occasions. For instance, before any litigation, on May 1, 2001, Brown faxed a letter to Stephens & Sons stating, "I agree that I owe you some monies for the work and material at SRA. .... you had verbally agreed to do at the cost not to exceed $18,000." Brown included a recalculation of $10,237.02 of the time and materials used. He also acknowledged the contract in a letter to KW Construction's bonding agent:

> [KW Construction] made a verbal agreement with [Stephens & Sons] to furnish labor to correct some work on this project. The work consisted of removing about 300 sq. ft. of concrete from the slab. Leveling the rest of the slab (grind and place a top coat) 5568 sq. ft. There was [sic] some porches, side walk, and curb and gutter that was also to be installed.

In Brown's affidavit in support of his motion to transfer venue, he acknowledged that the parties formed a contract: "The contract made the basis of Plaintiff's lawsuit was entered into between the parties ... in Rains County." At trial, Brown states clearly that he "owed the man some money." Brown also testified: "I've done a lot of verbal agreements. This was one of them." Likewise, Stephens testified that the two agreed on the scope of the work. The parties' testimony is clear and direct evidence of their intent to be bound.

Similarly, the parties' conduct supports the finding that they assented to the oral contract. Stephens & Sons commenced performance of the repairs and other concrete work and, as noted in Brown's daily work log, Brown was aware that Stephens & Sons had begun work. Brown sent correspondence to Stephens & Sons and to KW Construction's own bonding agent in which he acknowledges the oral contract with Stephens & Sons. He also sent to

Stephens & Sons a check for $4,717.00, indicating that the two had agreed otherwise but had not come to a clear understanding on the price to be paid. These facts support that the two had mutually assented to the contract, making the evidence legally sufficient to support such a finding.

Viewing the entire record, we again note the only major conflict in the evidence: the price to be paid to Stephens & Sons. KW Construction seizes on this conflict to support its contention that the evidence is factually insufficient to show mutual assent. Again, the absence of a price term is not necessarily fatal to the element of mutual assent. The trial court had the authority to supply a reasonable term since all other elements of contract are shown. Factually sufficient evidence supports the trial court's finding that Stephens and Brown mutually assented to a contract.

## IV. SUFFICIENCY OF EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDING OF REASONABLE VALUE OF SERVICES

■ Brown argues that insufficient evidence supports the trial court's finding that the reasonable value of the work completed by Stephens & Sons was $12,500.00. Since Stephens and Brown had done everything else necessary to make a binding agreement for services, the trial court was permitted to imply a reasonable price term. *See Buxani,* 940 S.W.2d at 353.

### A. Evidence of Reasonable Value of Work Performed

The evidence demonstrates a wide range of figures from which the trial court could determine the reasonable value of the services rendered. KW Construction's witness, Rodney Hoffman of Hoffman Concrete Construction, who finally completed the concrete work on the SRA project testified that, based on his thirty-two years of experience, it would have been reasonable to charge "somewhere around $5,000 to repair [the defective slab]." He also testified to his opinion on reasonable rates for the other concrete work completed by Stephens & Sons. According to our calculations using Hoffman's rates, the entire cost of the work done then would have been approximately $6,622.50.[5]

Brown testified that $5,000.00 would be a "fair" price to pay to Stephens & Sons for all the work done. However, in his correspondence to Stephens, he disputed the amount on the invoice and arrived at a price of $10,237.02. Brown also testified that Stephens agreed to do the work for $12,000.00.

■ The amount for which Stephens sent an invoice was $15,378.63. Of course, there is also evidence referring to "a cost not to exceed $18,000." So, the evidence before the trial court ranged from $5,000.00 to approximately $15,000.00, and possibly up to $18,000.00.[6]

---

5. Hoffman testified that the reasonable rate for labor only on curb and gutter work was $6.00 per linear foot. Labor only on sidewalk work would have been $1.50 per square foot. And according to Hoffman, the reasonable rate for labor on structural slab work would have been approximately $3.50 per square foot. Since Stephens & Sons completed 100 linear feet of curb and gutter, 215 square feet of sidewalk, and 200 square feet of structural slab, the cost, according to Hoffman's labor-only rates, would have been $1,622.50. Including the grinding and leveling figure Hoff-

man stated at $5,000.00, Hoffman's testimony advances a figure of approximately $6,622.50 as a reasonable value of services performed.

6. An agreement to render a performance at a price that shall not exceed a specified amount is valid as an agreement to render the performance at the stated maximum. *Norton v. Menard Lumber Co.,* 523 S.W.2d 791, 793 (Tex.Civ.App.-San Antonio 1975, no writ). Here, however, Stephens does not advance the argument in such terms and, it appears,

## B. Judgment Within Range of Evidence

 The trier of fact has several alternatives available when confronted with conflicting evidence. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986). It may believe one witness and disbelieve others. *Id.* It may resolve inconsistencies in the testimony of any witness. *Id.* It may accept lay testimony over that of experts. *Id.*

 The trier of fact is also afforded considerable discretion in evaluating opinion testimony on the issue of damages. *Id.* The fact that Hoffman testified as an expert is not controlling. It is well established in this State that opinion testimony does not establish any material fact as a matter of law. *Hood v. Tex. Indem. Ins. Co.,* 146 Tex. 522, 524, 209 S.W.2d 345, 346 (1948). Additionally, the record contains evidence tending to discredit or undermine Hoffman's testimony. He testified that he did not observe the defective slab before Stephens & Sons completed its work. Hoffman testified he based the $5,000.00 figure to repair the slab on the information he was told about the defects in the slab. This testimony certainly raised questions concerning the credibility and weight to be given to Hoffman's testimony, and those questions were for the trier of fact to pass upon. *See McGalliard,* 722 S.W.2d at 697.

 Utilizing these principles, the trier of fact has the discretion to award damages within the range of evidence presented at trial. *City of Houston v. Harris County Outdoor Adver. Ass'n,* 879 S.W.2d 322, 334 (Tex.App.-Houston [14th Dist.] 1994, writ denied). The trial court can form its own opinion from other evidence and by utilizing its own experience and common knowledge. *McGalliard,* 722 S.W.2d at 697; *Coffee v. City of Alvin,* 641 S.W.2d 597 (Tex.App.-Houston [14th Dist.]

did not seek to recover the $18,000.00 maxi-

1982, writ ref'd n.r.e.). We cannot speculate as to the manner in which the trier of fact reached its award. *See Peterson v. Reyna,* 908 S.W.2d 472, 476 (Tex.App.-San Antonio 1995), *modified on other grounds,* 920 S.W.2d 288 (Tex.1996).

Since the amount of $12,500.00 is within the range of evidence presented to the trial court and since that amount is not against the great weight and preponderance of the evidence, we conclude there is legally and factually sufficient evidence to support the trial court's assessment of reasonable value of services and overrule KW Construction's third point of error.

## V. CONCLUSION

Having determined that the trial court properly denied KW Construction's motion to transfer venue and that the evidence was legally and factually sufficient to support the trial court's finding that the parties entered into an oral contract and the reasonable value of the work performed was $12,500.00, we overrule KW Construction's point of error. Accordingly, we affirm the trial court's judgment.