

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DANIEL KEARNS, | § | No. 08-23-00300-CV |
| Appellant, | § | Appeal from the |
| v. | § | 57th Judicial District Court |
| RON HELLER and BUSINESS AIR, INC., | § | of Bexar County, Texas |
| Appellees. | § | (TC# 2023CI14065) |

## MEMORANDUM OPINION[1]

In this appeal we decide whether the underlying lawsuit should proceed in either Bexar or Travis County. Ron Heller and Business Air, Inc., Appellees here, filed suit against Appellant Daniel Kearns, in Bexar County. Kearns moved to transfer venue to Travis County. After the trial court denied the motion, Kearns filed this interlocutory appeal asserting that venue is proper only in Travis County. We disagree and affirm the trial court's order allowing the case to proceed in Bexar County.

---

[1] The appeal was transferred to this Court from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Fourth Court of Appeals' precedent to the extent it conflicts with our own. *See* Tex. R. App. P. 41.3.

## BACKGROUND

Based on the Appellees' pleaded allegations, in 2023 Kearns and Heller actively discussed creating an air charter business. The proposed deal would require purchasing an existing entity—Business Air, Inc.—and with the use of its "charter certificate," incorporate it into a new entity. Kearns was to be employed by the new entity and contribute his knowledge of the industry and business contacts. Specifically, the new business required a pool of aircraft owners who would permit the new entity to manage their aircraft. Heller claims that Kearns represented he already had such a book of business. Heller was to provide the initial funding.

Before all the final terms were agreed, Heller purchased all the common stock in Business Air for $450,000. But the business relationship between the two men then soured. A draft "term sheet" outlining their arrangement was never approved. And Heller contends that without any final agreement, Kearns represented to others that he is the CEO, the president, and owner of Business Air and "has the absolute authority to act on behalf of the entity."

Heller and Business Air, Inc. (collectively, the Appellees) sued Kearns in Bexar County. In their Original Petition, Appellees asked the trial court to determine the validity and construction of various documents that Kearns claimed memorialized a contract between Kearns and Business Air and/or Heller. More specifically, Appellees ask the court to declare that the series of email and other negotiations never resulted in an agreement, partnership, or obligation to employ Kearns. The Original Petition also sought a temporary restraining order (which was never issued) and injunctive relief against Kearns, that would restrain him from holding himself out as CEO, president, or an employee of Business Air, or take other specific actions on behalf of that entity.

Kearns responded with a motion to transfer venue to Travis County based on three grounds. First, he asserted that § 65.023(a) of the Texas Civil Practice & Remedies Code fixes mandatory

venue for injunctive relief at the defendant's county of residence—for Kearns that meant Travis County. Second, he asserted even setting aside the mandatory venue issue, Appellees failed to establish a prima facie case that a substantial part of the events or omissions giving rise to this claim occurred in Bexar County. Given that failing, he asserted that, under § 15.002(a)(2) of the Civil Practice & Remedies Code, Travis County was the proper venue because it was his county of residence.

After Kearns moved to transfer venue, but before any hearing, Appellees filed a First Amended Petition. In this petition, Appellees alleged facts they believed established a prima facie case for venue in Bexar County and requested the same declaratory relief as in their Original Petition. Heller added a claim for fraudulent misrepresentation and inducement. But both Appellees dropped any claim for injunctive relief.

Appellees also filed a response to Kearns's motion to transfer venue, which included Heller's affidavit describing the "when and where" of various meetings and conversations that he and Kearns had while negotiating over the potential new venture. That affidavit attached various records intended to corroborate the events described in the affidavit. Kearns objected to Heller's affidavit and its exhibits. Following a hearing, the trial court denied the motion to transfer venue without stating its reasons for doing so. The trial court did not rule on Kearns's objections to Heller's affidavit. This interlocutory appeal ensued.[2]

---

[2] Ordinarily, interlocutory appeals are not permitted from a trial court's venue determination. Tex. R. Civ. P. 87(6). However, when a venue determination involves multiple plaintiffs, Tex. Civ. Prac. & Rem. Code Ann. § 15.003(b). allows for an interlocutory appeal.

## APPLICABLE LAW & STANDARD OF REVIEW

### A. General venue rules

The general venue statute provides, with exceptions not applicable here, that "all lawsuits shall be brought: (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred; [or] (2) in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person[.]" Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(1–2). But "if an action is governed by a statute prescribing mandatory venue, the action 'shall be brought in the county required by that statute.'" *Fortenberry v. Great Divide Ins. Co.*, 664 S.W.3d 807, 811 (Tex. 2023) (quoting Tex. Civ. Prac. Rem. Code Ann. § 15.016). As applicable here, one such mandatory venue statute requires that "a writ of injunction against a party who is a resident of this state shall be tried in a district or county court in the county in which the party is domiciled." Tex. Civ. Prac. & Rem. Code Ann. § 65.023(a).

"The initial choice of venue is left to the plaintiff, who first decides venue by filing an original petition." *Fortenberry*, 664 S.W.3d at 811. If a defendant properly challenges venue, the plaintiff carries the burden to present prima facie proof that venue is maintainable in the county of suit, and the defendant has the burden to prove venue is maintainable in the county to which transfer is sought. *Id.*; *see* Tex. R. Civ. P. 87(2)(a) (stating burdens). The trial court "shall determine the venue of a suit based on the facts existing at the time the cause of action that is the basis of the suit accrued." Tex. Civ. Prac. & Rem. Code Ann. § 15.006. A plaintiff's venue facts will be taken as true unless specifically denied by an adverse party. Tex. R. Civ. P. 87(3)(a).

"Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." *Id.* A plaintiff's prima facie proof is not subject to rebuttal, cross-

4

examination, impeachment, or disproof. *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993). If the plaintiff proves venue facts that support venue, the trial court must maintain the lawsuit in the county where suit was filed unless the motion to transfer is based on an established ground of mandatory venue. Tex. R. Civ. P. 87(3)(c). If the plaintiff fails to meet this burden, the trial court must transfer the lawsuit to another specified county of proper venue. *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex. 1999) (orig. proceeding); Tex. Civ. Prac. & Rem. Code Ann. § 15.063.

## B. Venue in multi-plaintiff suits

In a suit in which there is more than one plaintiff, "each plaintiff must, independently of every other plaintiff, establish proper venue." Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a). That provision provides special rules in multi-plaintiff suits:

> (a) In a suit in which there is more than one plaintiff, whether the plaintiffs are included by joinder, by intervention, because the lawsuit was begun by more than one plaintiff, or otherwise, each plaintiff must, independently of every other plaintiff, establish proper venue. If a plaintiff cannot independently establish proper venue, that plaintiff's part of the suit, including all of that plaintiff's claims and causes of action, must be transferred to a county of proper venue or dismissed, as is appropriate, unless that plaintiff, independently of every other plaintiff, establishes that:
>
> > (1) joinder of that plaintiff or intervention in the suit by that plaintiff is proper under the Texas Rules of Civil Procedure;
> >
> > (2) maintaining venue as to that plaintiff in the county of suit does not unfairly prejudice another party to the suit;
> >
> > (3) there is an essential need to have that plaintiff's claim tried in the county in which the suit is pending; and
> >
> > (4) the county in which the suit is pending is a fair and convenient venue for that plaintiff and all persons against whom the suit is brought.

*Id.* § 15.003(a).[3]

---

[3] The exception embodied by the four factors in § 15.003(a)–(b) allow for a broader range of proofs, including rebuttal evidence that the defendant may offer. *Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 603 (Tex. 1999).

Section 15.003 also modifies our standard of review. In an interlocutory appeal from a venue determination involving multiple plaintiffs, a "court of appeals shall . . . determine whether the trial court's order is proper based on an independent determination from the record and not under either an abuse of discretion or substantial evidence standard[.]" Tex. Civ. Prac. & Rem. Code Ann. § 15.003(c)(1). Further, "[i]n determining whether venue was or was not proper, the appellate court shall consider the entire record, including the trial on the merits." *Id.* § 15.064(b). Thus our review in an interlocutory appeal of a venue determination is de novo. *Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 603 (Tex. 1999); *Sustainable Texas Oyster Res. Mgmt. L.L.C. v. Hannah Reef, Inc.*, 491 S.W.3d 96, 105–07 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

## ISSUES ON APPEAL

Kearns's statement of the issues as required by Tex. R. App. P. 38.1(f) identifies one global issue: whether the trial court erred in concluding that Heller and Business Air independently established venue in Bexar County. The sub-issues set out on that page of his brief all challenge the significance of Appellees withdrawing their claim for a TRO and injunctive relief in the First Amended Petition. The argument section of Kearns's brief, however, raises other challenges related to the admissibility of evidence, and whether a substantial part of each plaintiff's claims arose in Bexar County. We attempt to identify and address each of these arguments.[4]

---

Appellants' response to the motion to transfer venue did not argue that the exception applies, and the exception does not appear to have been argued below, so we do not consider it here.

[4] "Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver." *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam). Accordingly, an appellant can preserve error "in the body of their appellate brief," even if it is not separately listed in the notice of appeal or presented as an issue in the brief. *Id.* at 586; *see also Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012) (considering issue raised by "fair reading" of brief, even if not separately and specifically present in the issues listed in appellate brief).

## AMENDMENT OF THE PETITION NEGATES MANDATORY VENUE

We first consider Kearns's argument that based on the injunctive relief sought, a mandatory venue provision requires the case to be heard in Travis County. The argument urges that we must consider not only the Amended Petition but the Original Petition as well. And if we do so, Kearns says that the injunctive relief in the Original Petition triggers the mandatory venue provision in § 65.023(a). Appellees do not dispute that Travis County—where Kearns resides—was initially the place of mandatory venue when they requested injunctive relief in their Original Petition. But Appellees withdrew their request for injunctive relief when they filed their Amended Petition. As a result, Appellees contend that the mandatory venue statute no longer applies.

### A. Kearns's argument that the original petition must be considered

Kearns's argument that we must still consider the Original Petition's injunction count, and the mandatory venue provision that the injunction count triggers, side steps several principles. First, a plaintiff may freely amend its petition at least seven days before the venue hearing. *Nabors Loffland Drilling Co. v. Martinez*, 894 S.W.2d 70, 73 (Tex. App.—San Antonio 1995, writ denied) (disagreeing with argument that allowing plaintiff to amend petition to raise new cause of action for venue purposes allows plaintiff to circumvent venue law); *see* Tex. R. Civ. P. 62–64 (rules governing amended instruments). Second, an amended instrument—in this case an amended petition—takes the place of the substituted instrument. *See* Tex. R. Civ. P. 65 ("Unless the substituted instrument shall be set aside on exceptions, the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause [subject to exceptions not at issue here]"); *Mensa-Wilmot v. Smith Int'l, Inc.*, 312 S.W.3d 771, 779 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("A proper amended pleading supersedes and replaces prior pleadings.").

And finally, when an amended petition is timely filed, the amended pleading is the live and only pleading properly before the court at a hearing on a motion to transfer venue. *Watson v. City of Odessa*, 893 S.W.2d 197, 200 (Tex. App.—El Paso 1995, writ denied) (holding that first amended petition supplanted original petition and court was bound to consider only last pleading); *see also Cincinnati Ins. Co. v. Villanueva*, No. 04-20-00389-CV, 2022 WL 608962, at *2 (Tex. App.—San Antonio Mar. 2, 2022, pet. denied) (mem. op.) ("The trial court must base its venue determination on the last pleading that was timely filed."). The legislature has allowed the plaintiff some control over venue by dictating the relief they seek. *In re Cont'l Airlines, Inc.*, 988 S.W.2d 733, 737 (Tex. 1998) ("The venue statutes give plaintiffs some degree of choice over where to file their suit."). Our procedural rules also give a plaintiff the ability to add or subtract claims through amended pleadings. Therefore, although § 15.003 commands that we must examine the entire record, we find no support for using that provision to resurrect a superseded pleading.

## B. Nature of the relief sought

We next consider Kearns's argument that the mandatory venue statute still applies because the relief sought by Appellees in their Amended Petition is injunctive in nature. Kearns urges that we look past to what he terms artful pleading, to find that even the amended pleading seeks injunctive relief.

Section 65.023(a) provides for mandatory venue only when a plaintiff's pleadings establish the relief sought is purely or primarily injunctive. *In re Fox River Real Est. Holdings, Inc.*, 596 S.W.3d 759, 765 (Tex. 2020) (orig. proceeding). "In this context, 'primary' necessarily means first in order of rank or importance." *Id.* Section 65.023(a) does not apply if the requested injunctive relief is merely ancillary to other relief sought or is not the dominant purpose or central focus of the lawsuit. *Id.* (recognizing "Legislature did not intend for the tail to wag the dog"). To determine

8

the dominant purpose of Appellees' lawsuit, we employ a commonsense examination of the substance of their claims for relief as stated in their Amended Petition. *See id*. "[T]he true nature of the lawsuit depends on the facts alleged in the petition, the rights asserted, and the relief sought." *Airvantage, LLC v. TBAN Properties #£1, L.T.D.*, 269 S.W.3d 254, 258 (Tex. App.—Dallas 2008, no pet.).

These stated principles come from a series of cases where a plaintiff's petition sought injunctive relief *alongside* other traditional claims. *See, e.g.*, *In re Fox River Real Estate*, 596 S.W.3d at 765 ("The crux of this dispute is whether Fox River 'primarily' seeks injunctive relief despite pleading for significant damages, attorney's fees, declaratory relief, and other equitable relief, including a constructive trust."); *In re Cont'l Airlines*, 988 S.W.2d at 736 (suit for declaratory and injunctive relief over rights to fly into Love Field); *In re Daniel*, No. 12–06–00232–CV, 2006 WL 2361350, at *2 (Tex. App.—Tyler Aug. 16, 2006, orig. proceeding) (mem. op.) (suit seeking injunction to enforce noncompete and nondisclosure agreement along with declaratory judgment to declare the rights, duties, and legal relations between former employer and employee); *In re FPWP GP LLC*, No. 05-16-01145-CV, 2017 WL 461355, at *1 (Tex. App.—Dallas Jan. 25, 2017, no pet.) (mem. op.) (suit between partners regarding dispute over which party was partnership's general partner, and which sought declaratory and injunctive relief). Accordingly, the cases discuss as between the injunctive and declaratory relief claims, which is dominant. *See In re FPWP GP LLC*, 2017 WL 461355, at *2–4 (collecting and discussing cases in this genre).

But Kearns asks us to take those cases one step further by characterizing Appellees' declaratory relief claim as injunctive, even though there is no injunctive relief expressly asked for in the amended petition. This ask is a bridge too far. It is one thing to decide as between several

9

pleaded claims which is predominate, and whether one is a mere shade or phase of another. It is quite another to recharacterize a claim that seeks no injunctive relief as one for an injunction. *See In re Cont'l Airlines*, 988 S.W.2d 733, 737 (Tex. 1998) ("As Fort Worth asserts, its pleadings do not ask for and would not support a permanent injunction. . . . We cannot reform Fort Worth's requests for relief to reflect the relators' suspicions.").

No doubt, venue determinations are dictated by "the substance of the claim, not its form." *In re Kerr*, 293 S.W.3d 353, 356 (Tex. App.—Beaumont 2009, orig. proceeding) (per curiam) (collecting cases). So in *Renwar Oil Corp. v. Lancaster*, the Texas Supreme Court explained that the nature of the suit is determined from the facts alleged in the plaintiff's petition, the rights asserted, and the relief sought. 276 S.W.2d 774, 775 (Tex. 1955). A court should look to "the heart of the controversy," and to "the controlling issue." *Id.* at 776. In that way, a mandatory venue provision may not be evaded merely by artful pleading. *In re Kerr*, 293 S.W.3d at 358. Even applying that rubric would not justify reclassifying the Amended Petition as one for injunctive relief.

In the Amended Petition, Heller alleged Kearns made material misrepresentations about the book of aviation business that he could transfer to the new venture. According to the pleadings, those representations induced Heller to purchase the stock in Business Air. The pleading further alleges that Kearns had neither a book of business nor the intent to transfer the work to Business Air. Heller further alleges that "Kearns knew Heller was ignorant of the falsity of this information and that [Heller] did not have an equal opportunity to discover the truth." Finally, Heller alleged he reasonably relied on these material representations when he acquired Business Air and he was injured as a direct and proximate result of Kearns's fraud. In his prayer for relief, Heller requested actual damages and exemplary damages, as well as attorney's fees and other costs.

10

We conclude that nothing about the fraudulent misrepresentation and inducement claim reveals an attempt to evade the mandatory venue statute by artful pleading. Heller alleges that he spent $450,000 to buy a company based on representations that he claims were false and that induced him to make the expenditure. Nor is the fraud pleading a disguised claim for injunctive relief.

In Appellees declaratory relief claim, they allege that no agreement was ever reached that would allow Kearns to claim an ownership interest in, or the right to control Business Air, nor a right to a position in the company. Kearns also contends this request for a declaratory judgment is akin to an injunction. In that regard, Kearns directs us to *In re FPWP GP LLC*, a suit to resolve a dispute among the partners concerning "(1) their rights in and obligations to the partnership, (2) which partnership agreement govern[ed] their relationship, and (3) which entity [was] the partnership's general partner." 2017 WL 461355, at *1. The plaintiff sought both injunctive and declaratory relief. *Id*. In deciding whether the relief sought was purely or primarily injunctive, the Dallas court discounted the declaratory-judgment action because it was a different means to the same end. But that suit still involved an "end" which included voiding actions taken by a putative partner and prohibiting that partner from taking certain actions. *Id*. That relief is not sought in this suit, which leaves only the specter that if declaratory relief is granted, then injunctive relief might someday follow. "However, that can be said of any case." *In re Cont'l Airlines*, 988 S.W.2d at 736. "The mere possibility that a defendant will disobey the final judgment of a court, causing it to resort to enforce its judgment through injunction, does not transform the suit into an injunction suit under section § 65.023(a)." *Id.* at 736–37. The declaratory judgment relief seeks the answer to real questions: who owns and controls Business Air, Inc. and what obligations, if any, does it owe to Kearns. Those questions would require answers independent of injunctive relief. Therefore, we

disagree with Kearns's contention that Appellees are merely recasting their request for a declaratory judgment to avoid the mandatory venue statute.

We conclude the mandatory venue statute no longer applies, and so the sole question is whether "a substantial part of the events or omissions" giving rise to Appellees' claims occurred in Bexar County. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(1).

## VENUE WHERE A SUBSTANTIAL PART OF THE EVENTS GIVING RISE TO THE CLAIM OCCURRED

Appellees' Amended Petition requested two forms of relief. Heller and Business Air sought a declaratory judgment establishing: that no agreement between Heller and Kearns or between Business Air and Kearns exists; there is no partnership between Heller and Kearns or between Business Air and Kearns; Heller and Business Air have no contractual obligation to pay or employ Kearns; and to declare the rights, legal status, and other legal relations of Kearns and Heller with respect to Business Air or otherwise arising from their communications about a potential business venture.

Heller raised his own claim for fraudulent misrepresentation and inducement under which he sought actual damages and exemplary damages. We consider each plaintiff's claims in turn.

### A. Heller's claims

#### (1) Fraudulent misrepresentation and inducement claim.

On appeal, Kearns asserts that there is no link between the essential elements of Heller's fraud claim and Bexar County. To prevail on a fraud claim, a plaintiff must prove:

> (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation.

12

*Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011). These same elements must be established in a fraudulent inducement claim. *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001).[5]

Heller's affidavit provides some evidence of the following events: Kearns and Heller first met in Bexar County in July 2021 and Kearns approached Heller about acquiring Business Air in May 2023. In June 2023, Kearns emailed an invitation to Heller to attend a video conference about the purchase. Heller received the email while in Bexar County and participated in the video conference from Bexar County. The potential purchase also was discussed over the telephone and via emails while Heller was in Bexar County. According to Heller, Kearns represented to him that Kearns had "a well-developed book of aviation business that he would disclose and contribute to the proposed venture." Heller stated Kearns's alleged book of business was "a material part of the proposed deal and induced [him] to purchase Business Air" and he purchased Business Air in reliance on Kearns's promise that he would disclose and transfer his book of business to Business Air. Heller alleged these representations were material to him because he did not believe the business would succeed without an existing book of aircraft owners that would allow Business Air to manage their private aircraft. Heller said he received Kearns's representations during the teleconference that he participated in from Bexar County, their face-to-face meeting in Bexar

---

[5] On appeal, Kearns asserts the existence of a contract is an element of a fraud claim and the existence of a contract moots Appellees' entire lawsuit. But a plaintiff need not prove the merits of its cause of action at the venue stage. Tex. R. Civ. P. 87(2)(b) ("It shall not be necessary for a claimant to prove the merits of a cause of action, but the existence of a cause of action, when pleaded properly, shall be taken as established as alleged by the pleadings."); *see also KW Const. v. Stephens & Sons Concrete Contractors, Inc.*, 165 S.W.3d 874, 882–83 (Tex. App.—Texarkana 2005, pet. denied) (holding "events or omissions pertaining to *two elements* of . . . breach of contract claim [were] sufficient to qualify as a 'substantial part' of the plaintiff's claim and sufficiently connect the claim to Lamar County") (emphasis added); *Clear Diamond, Inc. v. Zapata*, No. 03-20-00057-CV, 2021 WL 3572725, at *8 (Tex. App.—Austin Aug. 13, 2021, no pet.) (mem. op.) ("Contrary to the Zapatas' assertion, the Plaintiffs were not obligated to support their venue choice with prima facie proof as to the merits of their underlying negligence claims against Lonesome Dove or any other defendant.").

County, during telephone calls in Bexar County, and via emails he received and read in Bexar County.

"Texas courts have stated that the receipt of telephone calls and letters in a particular county weighs in favor of a finding that venue is appropriate in that county." *Siemens Corp. v. Bartek*, No. 03-04-00613-CV, 2006 WL 1126219, at \*6–7 (Tex. App.—Austin Apr. 28, 2006, no pet.) (mem. op.) (the plaintiffs received representations about retention bonuses in Travis County by email, letter, and telephone); *see also KW Const. v. Stephens & Sons Concrete Contractors, Inc.*, 165 S.W.3d 874, 882–83 (Tex. App.—Texarkana 2005, pet. denied) (finding venue proper in county based on a phone call and a mailed check to that county that "connect[ed]" the defendants' actions to two elements of breach of contract); *Massey v. Columbus State Bank*, 35 S.W.3d 697, 700 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (although court ruled venue issue was waived, it noted venue was proper because case filed in county in which all or substantial part of events giving rise to lawsuit occurred, including bank's receipt of harassing phone calls and letters from Massey); *Colonial Cnty. Mut. Ins. Co. v. Valdez*, 30 S.W.3d 514, 527 (Tex. App.—Corpus Christi 2000, no pet.) (court concluded venue proper in Cameron County, in part, because Colonial mailed letters to Valdez in Cameron County concerning claim and Valdez's responses were mailed from Cameron County; and alleged misrepresentations were made in Cameron County).

When a plaintiff relies on making represenations to satisfy venue, those represenations must relate to an essential element of the claim. *Double Diamond-Delaware, Inc. v. Alfonso*, 487 S.W.3d 265, 275 (Tex. App.—Corpus Christi 2016, no pet.) (concluding that while representations were made in certain county, none related to an essential element of the particular claim asserted). The represenataions that Heller relies on meet that test. They relate to the existance of a book of

14

business that Heller claims was essential to his decision to buy the stock in Business Air, and that absent those represenations, he would not have purchased the business.

### (2) Declaratory relief

Heller's declaratory relief claim focuses on who owns Business Air, and what obligations it may owe to Kearns. Based on the pleaded allegations, there is no finalized written contract between Kearns and Heller. Instead, any contract (and thus ownership of or duties owed by Business Air) would be shown, if at all, through a series of communications that could be pieced together to show a definitive offer and acceptance. And the gist of the declaratory relief claim is the absence of any offer giving Kearns rights in Business Air that Heller accepted. Heller's affidavit attests that many of the communications between the parties occurred in Bexar County. Even at that, an essential premise of his claim is the absence of either an offer or acceptance. So if a firm offer originated in Travis County and was transmitted to Bexar County, Heller would likely need to show the absence of an acceptance made in Bexar County—which is what his affidavit describes. We conclude the events alleged to have occurred in Bexar County constitute a substantial part of the events giving rise to Heller's declartory relief.

### B. Request for declaratory judgment by Business Air

An action for declaratory judgment is governed by the general venue rules for civil actions. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 471 (Tex. 1995). Focusing on the requirement that each plaintiff must show venue, Kearns first attacks whether Business Air met that burden. His three-pronged attack first includes Kearns's claims that the declaratory relief that Business Air sought is primarily injunctive—a claim we reject as discussed above. But he offers two other arguments. He claims that Business Air presented no evidence at all, because the only evidence it filed was through Heller's affidavit which claims Heller is its corporate representative. Kearns

challenges that assertion in the affidavit. Next, Kearns contends that Business Air has no connection to Bexar County, as the company is based in Montgomery County. We address those two claims in turn.

### (1) Heller's affidavit

Appellees attached Heller's affidavit to their response which itself attached copies of various emails between Kearns and Heller and others. Before the trial court, Kearns filed an objection in which his sole complaint was that "Heller's sham affidavit consisting of conclusory statements and factually impossible and inconsistent allegations does not amount to evidence that Bexar County is the proper venue." The trial court never ruled on that objection. Kearns did not raise any objections before the trial court regarding the other documents attached to Appellees' response.

An objection that an affidavit is conclusory is an objection to the affidavit's substance which does not require a ruling by the trial court, and which may be raised for the first time on appeal. *See Seim v. Allstate Texas Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (per curiam) (stating that defects in the substance of an affidavit may be raised for the first time on appeal, but defects in the form of an affidavit must be objected to and ruled on in the trial court or they are waived); *Trejo v. Laredo Nat'l Bank*, 185 S.W.3d 43, 51 n.9 (Tex. App.—San Antonio 2005, no pet.) (same). On appeal, however, Kearns does not challenge Heller's affidavit as being conclusory. So we do not address that complaint.

Instead, for the first time on appeal, Kearns's objects that the affidavit fails to show that Heller may act as an agent of Busniess Air, and thus speak for the company.[6] Kearns develops

---

[6] The affidavit recites: "I own 100% of the common stock of Business Air, Inc. I am a custodian of its records and by virtue of my duties and responsibilities am familiar with the manner in which the records and its affiliated entities are

16

two threads for that claim. First, even if Heller owns 100% of Business Air's common stock, that does not show he is an officer or authorized to speak for the corporation. Second, Heller's statement in the affidavit that he is the custodian of records and statements about his duties are "deficient as a matter of law" to demonstrate he was authorized to act on behalf of Business Air. Kearns also complains, for the first time on appeal, that the attachments to Heller's affidavit are not competent evidence as business records.

But we need not address the merits of these complaints because, because even if Heller has not established at the venue stage that he has authority to speak on Business Air's behalf, the substance of his affidavit contains undisputed facts that underlie Appellees' argument that venue is proper in Bexar County. Each plaintiff must indeed "independently of every other plaintiff, establish proper venue." Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a). But that requirement does not also mean that each plaintiff must file its own affidavit and exhibits, nor preclude one plaintiff from citing to record evidence offered by another plaintiff. Section 15.003 in fact commands that we must include the entire record in our review. So even if we consider Heller's affidavit only as his own recollection of events, nothing precludes Businss Air from relying on the same affidavit to establish facts supporting its own venue argument. Stated otherwise, Kearns does not show why the venue evidence of one plaintiff (Heller) cannot be considered by the court for use by another plaintiff (here, Business Air). We do so and reject Kearns's argument, even if true, that because no authorized representative of Business Air signed an affidavit, its claims must be transferred.

---

created and maintained. As part of my duties to Business Air, Inc., I regularly conduct business conversations and make business decisions in San Antonio, Texas."

17

### (2) Business Air's connection to Bexar County

Heller's affidavit recites that as part of his duties to Business Air, Inc., he regularly conducted business conversations and made business decisions in San Antonio, Texas. He avers that "[s]ince acquiring ownership of Business Air, Inc., I have managed it primarily from San Antonio and, to a small extent, from Houston." He pays employee salaries from San Antonio, as he does for airplane and engine repairs. And as set out above, the essense of the declaratory judgment claim is that the several emails and other communicaitons exchanged between Heller and Kearns, both before and after Heller purchased Business Air's stock, do not establish Kearns's right of ownerhip or control of Business Air. Many of those communications were made in Bexar County or received there. These assertions are enough to show that a substantial part of Business Air's claim arose in Bexar County.

We therefore conclude that the trial court did not err in refusing to transfer venue for Business Air's claims.

## CONCLUSION

Having determined the mandatory venue statute no longer applies and each Appellee established proper venue in Bexar County, we overrule Kearns's single issue on appeal (and its subparts as noted above) and affirm the trial court's Order Denying Defendant's Motion to Transfer Venue.

JEFF ALLEY, Chief Justice

June 18, 2024

Before Alley, C.J., Palafox and Soto, JJ.

18